MAYHEW et al. v. GARRETT, County Judge.

No. 1632.

Court of Civil Appeals of Texas. Eastland.

Feb. 5, 1936.

Rehearing Denied Feb. 21, 1936.

Butts & Wright, of Cisco, for appellants.

Grady Owen, of Eastland, for appellee.

GRISSOM, Justice.

On the 29th day of December, 1935, the relators, W. H. Mayhew and C. E. Mayhew, made application to the respondent, Hon. Clyde Garrett, as county judge of Eastland county, Tex., for a license to sell beer with an alcoholic content not to exceed 3.2 per cent. by weight in precinct No. 6 of Eastland county, and requested respondent to set a time for a hearing, that notice be given of the filing of the application, etc. Respondent, evidently being of the opinion that the license could not legally issue, refused to take any of the preliminary steps necessary to its issuance. Thereupon relators presented an application for mandamus to the Ninety-first district court of Eastland county, praying for a judgment requiring relator to take the steps necessary for the issuance of such license. This application was refused on the 14th day of January, 1936, and relators have appealed to this court.

It must be remembered that this is an application for a writ of mandamus to be issued to a public officer requiring him to perform an official act. Mandamus will never issue in such a case "unless the relator shows a clear legal right to its performance at the hands of the respondent." 28 Tex.Jur. § 11, p. 533 et seq.

Prior to the adoption in 1919 of section 20, article 16, of the Constitution of Texas, known as the state-wide prohibition amendment, Eastland county, by an election held within and for the whole coun-ty, had prohibited the sale of intoxicating liquors within the county. By virtue of the amendment of 1919, the entire state continued to be legally "dry" as to all kinds of liquors, except for certain purposes that need not be considered here, until August 26, 1933, when the "beer amendment" was adopted by amendment of article 16, section 20, of the Constitution. That portion of the amendment of 1933 thought necessary for an understanding of the question to be discussed reads as follows: "Provided the Legislature shall enact a law or laws whereby the qualified voters of any county, justice's precinct, town or city may, by a majority vote of those voting, determine from time to time whether the sale for beverage purposes of vinous or malt liquors containing not more than three and two-tenths per cent (3.2%) alcohol by weight shall be prohibited within the prescribed limits; and provided further that in all counties in the State of Texas and in all political subdivisions thereof, wherein the sale of intoxicating liquors had been prohibited by local option elections held under the laws of the State of Texas and in force at the time of the taking effect of Section 20, Article 16, of the Constitution of Texas, it shall continue to be unlawful to manufacture, sell, barter or exchange in any such county or in any such political subdivision thereof, any spirituous, vinous or malt liquors or medicated bitters, capable of producing intoxication or any other intoxicant whatsoever, unless and until a majority of the qualified voters in said county or political subdivision thereof voting in an election held for such purpose shall determine it to be lawful to manufacture, sell, barter and exchange in said county or political subdivision thereof vinous or malt liquors containing not more than three and two-tenths per cent (3.2%) alcoholic content by weight, and the provision of this subsection shall be self-enacting."

On or about the 21st day of December, 1933, an election was held in justice's precinct No. 6 of Eastland county, "at which election a majority of the voters of said precinct voted to legalize the sale of beer with an alcoholic content not to exceed 3.2 per cent by weight."

"On or about the 3rd day of January, 1936, there was held a county wide election in Eastland County, Texas, wherein a majority of those voting in said election voted against legalizing the sale of vinous

and malt liquors that do not contain alcohol in excess of 4% by weight."

The facts are agreed to between the parties, and the cause is submitted upon an agreed statement of facts. It is further agreed that there has been no precinct local option election within justice's precinct No. 6 since the one mentioned in the second preceding paragraph; that relators are in every way qualified to receive the license applied for if it can legally be issued under these facts. Whether or not it can be legally issued is the sole question of law to be determined.

In the case of Walling v. King, County Judge, 87 S.W.(2d) 1074, 1075, the Supreme Court, by adopting the opinion of Judge German of the Commission of Appeals, held a city election void under the following circumstances: Childress county had adopted prohibition by county-wide election before 1919. On the 26th day of August, 1933, the county by a county-wide election voted against permitting the sale of 3.2 beer in the county. On March 2, 1934, the city of Childress in Childress county held a city election in which the majority of those voting voted to permit the sale of 3.2 per cent. beer within the city. Walling made application to the county judge of Childress county for a license authorizing him to sell 3.2 per cent. beer in the city of Childress. The county judge refused to take any action on the application. Application for mandamus to compel the county judge to issue the license was presented to the district judge, who refused to issue the mandamus, and Walling appealed to the Court of Civil Appeals at Amarillo. The court certified the following questions to the Supreme Court:

"1. Under all the circumstances was the election held within and for the City of Childress on March 2nd, last, void?

"2. Did the County Judge err in refusing to have a hearing on the appellant's application for license?

"3. Did the District Judge err in denying the appellant's application for a writ of mandamus?"

The Supreme Court, in answering the questions certified, after setting out the constitutional amendment of 1933, known as the Beer Amendment, said:

"Prior to the adoption of section 20, article 16, it had been the law of this state for many years that when a county, justice's precinct, or other political subdivision of a county voted to prohibit the sale of intoxicating liquors, it continued to be unlawful to sell such liquors within the prohibited territory until the voters of the identical territory which had adopted prohibition voted to repeal it. In Ex parte Pollard, 51 Tex.Cr.R. 488, 103 S.W. 878, Judge Davidson, speaking for the Court of Criminal Appeals, said: 'Wherever a local option law is once legally put into operation in a given territory, it must remain in force until it has been voted out by the voters of the territory where such law was originally vitalized.'

"Several cases are cited in support of this holding.

"The constitutional amendment set out above by express words adopted this rule of law. The language is that in any county or any political subdivision thereof where the sale of intoxicating liquors had been prohibited prior to the adoption of section 20, article 16, it should remain unlawful to sell same (including beer) in said county or political subdivision 'until a majority of the qualified voters in said county or political subdivision thereof voting in an election held for such purpose shall determine it to be lawful to manufacture, sell, barter and exchange in said county or political subdivision thereof vinous or malt liquors containing not more than three and two-tenths per cent (3.2%) alcoholic content by weight.'

"The very constitutional amendment by which appellant is accorded his right to a license expressly provided that if local option prevailed in the county where he sought to obtain his license it was necessary for the voters of that county to authorize the sale of the 3.2 per cent. beer before he could obtain a license. This the county has never done, but on the contrary it had for the second time voted in favor of local option so far as beer was concerned. It necessarily follows that as Childress county had prohibited the sale of intoxicating liquors within its boundaries prior to the adoption of section 20, article 16, by virtue of subdivision (a) set out above, it was unlawful to sell beer within any part of said county until voters of the whole county determined otherwise. Local option within the county as a whole could not be repealed by piecemeal.

"For other reasons set out in the opinion in the case of Coker, County Judge, v. Kmeicik (Tex.Com.App.) 87 S.W.(2d)

1076, this day decided, the election within the city of Childress was ineffectual so far as sale of beer in Childress county was concerned.

"It follows that the election of March 2, 1934, was unauthorized and was a nullity. We therefore answer question No. 1 in the affirmative, and questions Nos. 2 and 3 in the negative."

To further stress the fact that the question has been very definitely decided by the Supreme Court of Texas, we present the following extracts from the opinion referred to; that is, Coker, County Judge, v. Kmeicik, 87 S.W.(2d) 1076, 1077:

"The theory of defendant in error is that the constitutional amendment of August 26, 1933, by its local option provision guarantees to a justice precinct the right, by a majority vote of the qualified voters, to permit the sale of beer within said precinct, notwithstanding the county may have voted to prohibit the sale of beer within its borders. * * *

"Eliminating all decisions which appear to be based upon statutory provisions rather than the Constitution itself, we still find that the Courts of Civil Appeals, the Court of Criminal Appeals, and the Supreme Court have expressed the conclusion that the Constitution of 1876 guaranteed to counties, having voted to prohibit the sale of intoxicating liquors, the right to remain dry as a whole, notwithstanding a precinct within the county may vote against prohibition; and have held that the smaller subdivision cannot control over the larger subdivision so far as the right to adopt prohibition is concerned. This is based on the unanswerable proposition that to hold otherwise would be to permit the smallest subdivision recognized by the Constitution to nullify the Constitution as to all larger subdivisions, including the county. * * *

" 'We have had this question before us in several cases, and there is not the slightest intimation to the effect that a precinct, town, or city, etc., can hold an election, when the county has voted prohibition, until prohibition is repealed by a vote of the entire county. Every case referred to is emphatically the other way, when properly understood.' * * *

"We are of the opinion that the provision of the amendment of 1933 set out above is to be given the same effect."

It occurs to us that the opinions in Walling v. King, supra, and Coker v. Kmeicik, supra, both adopted by the Supreme Court, are determinative of the issue against relators. But it is contended by relators that the amendment of article 16, section 20, of the Constitution of Texas, of August 24, 1935, provides for a local option election to *legalize* as well as to prohibit, and that, by virtue of said amendment and the enactment by the Legislature of article 2, § 1, subd. (b), c. 467, pp. 1826, 1827, Acts 44th Leg., 2nd C.S., 1935 (Vernon's Ann.P.C. art. 667—1(b), which became effective November 15, 1935, it was intended, and the result is, that the Legislature "ratified and validated that which was declared to be illegal by the case of Coker v. Kmeicik." The provisions do not purport to be retroactive, nor do they purport to validate or ratify anything that has been illegally done. The act of the Legislature merely lays down the procedure prescribed by it for future local option elections. It plainly speaks of the future, not the past. A portion of the same section of said act does provide that in counties or subdivisions "wherein a majority of the voters have voted to legalize the sale of beer in accordance with the local option provisions of Chapter 116, Acts of the Regular Session of the Forty-third Legislature [1933], beer may continue to be sold lawfully."

Substantially the same provision as that quoted is to be found in subdivision (c) of the 1935 amendment of article 16, section 20, of the Constitution of Texas.

We think it was intended in both instances to refer to a valid legal local option election in the area in question. In fact, section 23, article 1, of the Acts of the Legislature last above referred to (Vernon's Ann.P.C. art. 666—23) expressly so provides. It reads as follows:

"Whenever the term 'dry area' is used in this Act it shall mean and refer to all counties, justice precincts, incorporated cities or towns wherein the sale of intoxicating liquors had been prohibited by *valid* local option elections held under the laws of the State in force at the time of the taking effect of section 20, Article XVI, Constitution of Texas, in the year 1919. It likewise shall mean and refer to any such area where such sale shall be prohibited under the terms of this or any other Act.

"The term 'wet area' shall mean and refer to all other areas of the State.

"As to any particular type of liquor, each county, justice precinct, incorporated city or town within this State shall be deemed to be a 'dry area' unless such county, justice precinct, city or town, was a 'wet area' at the time Section 20 of Article XVI of the Constitution became effective and has not since said time changed its status, or unless the sale of that particular type of liquor has been legalized by local option election in such county, justice precinct, city or town, since said time.

"The term 'wet area' shall be construed as including in each particular instance only liquors of a type or liquors not exceeding in alcoholic content that which have been *legalized by a valid local option election in the prescribed area.*" (Italics ours.)

We think it was clearly intended by the last constitutional amendment and legislative enactment to place the people of Texas, with reference to local option in the respective areas, in exactly the status they had fixed for themselves by valid local option elections, there to remain until changed in like manner.

That the local option election in justice's precinct No. 6 was not valid, but void, was definitely determined by the Supreme Court in the cases cited.

Our conclusion against the contention that the void election has been validated is fortified by the fact that the same contention, in effect, was presented to the Supreme Court in the cases mentioned, at least on motion for rehearing, and rejected by that court when it overruled the motions for rehearing in January, 1936.

We conclude that the action of the county judge was correct, and that the district court did not err in refusing to issue the mandamus. The judgment of the district court is affirmed.

FUNDERBURK, Justice (dissenting).

At the time of the adoption of the Constitution, in 1876, there was no constitutional prohibition of the sale of intoxicating liquors in this state, nor was the Legislature granted the power to prohibit such sale. That power was in effect denied to the Legislature by article 16, § 20, because of the constitutional command therein to the Legislature to grant such power to the qualified voters of "any county, justice's precinct, town or city" to be optionally exercised. By the 1891 amendment of said article and section of the Constitution, the Legislature was commanded, in effect, to extend the same grant of optional power to the qualified voters of "such subdivision of a county as may be designated by the commissioner's court of said county." The power thus granted was the power to *prohibit.* There was no reason to grant to either the Legislature or to the voters of a county or subdivision thereof the power to *legalize* the sale of intoxicating liquors, since, in the absence of an exercise of the power to prohibit, such sale was legal without any authorization. Ex parte Fields, 39 Tex.Cr.R. 50, 46 S.W. 1127.

The optional power to prohibit, being given to counties and the named subdivisions of counties in the same terms, it was inevitable that questions of conflicting powers should arise between the counties or larger subdivisions of counties and the smaller subdivisions included therein. Answering a contention to the effect that the voters of each subdivision had the right to determine by their votes what the rule therein should be and that "when once established, the rule cannot be repealed but by the votes in the same territory," and, further, that "when an election has been held in a subdivision, it is set apart as a local option district, and cannot be used as part of the territory of any other such district less than the county," the Supreme Court, in Griffin v. Tucker, 102 Tex. 420, 118 S.W. 635, 639, declared: "It is true that, when the prohibitory rule is put in force, it cannot be repealed or displaced except by the vote of the district which adopted it. It is quite as true that an election, however resulting, in a larger including subdivision has no such effect. If it result in the defeat of prohibition, the rule remains unaffected in the territory that had before adopted it. If it result in the adoption of prohibition, that rule is extended to the whole, where before it was in force only, in a part, of the territory. If the included territory has rejected prohibition, it is still the right, given by article 3384, of the voters of any lawful including subdivision to say whether or not the law shall be put in force therein, which means that the law shall be made to operate over every foot of the territory in which the election is held."

The conclusion of the Supreme Court was stated thus: "So there is no conflict of rights."

Let us suppose said article 16, § 20 (1891 amendment), had prohibited generally the sale of intoxicating liquors in Texas, but, in terms and manner corresponding to said provision as written, it had granted the optional power to counties, justice's precincts, cities, towns, and defined districts by majority vote to *legalize* the sale thereof. Naturally the same questions of conflicting power would no doubt have arisen between the included and the including units. One justice's precinct, let us say, in a county commissioners' precinct would, by majority vote, legalize. Another justice's precinct comprising the remainder of the commissioners' precinct would, by majority vote, fail to legalize. In common parlance one would go "wet" and the other "dry," which terms, being well understood, we may hereafter use. Then suppose an election was held in the duly designated commissioners' precinct. What would have been the result if the majority voted to legalize? Can it be doubted that every part of the including territory would be wet just as certainly so, and for the very same reason, as it was held in Griffin v. Tucker, supra, under identical circumstances, except the proposition voted upon was to prohibit where otherwise it was legal, instead of to legalize where otherwise it was prohibited, that every part of such included territory was dry? The observation of Judge Williams would be equally true in each case, namely: "But we see nothing in the statute or the Constitution by force of which the right of a subdivision to have an election throughout its extent may be taken away by the action of part of its territory constituting a smaller one." What would have been the result if the majority vote was against legalizing? There would simply be a failure to legalize the sale of intoxicating liquors in the commissioners' precinct. Just as in the case cited, it was held to be a result of the failure to adopt prohibition in the including territory that "This is not allowed to affect the right of an included subdivision to adopt the law for itself when it has been rejected by the including one," so it would be the result of a failure to legalize in the larger subdivision that it would not affect the right of the included subdivision to legalize such sale therein.

From 1919 to 1935, with a partial exception, introduced by the 1933 amendment, not deemed of any controlling importance in the decision of this case, the sale of intoxicating liquors for beverage purposes was totally prohibited in this state by the Constitution itself. The entire area was dry. The 1935 amendment of said article 16, § 20, restored local option to counties, justice's precincts, incorporated cities, and towns. Unlike the former grant of power to prohibit, however, what was otherwise lawful, this new grant of power was both to prohibit and to legalize. The 1935 amendment, unlike the provisions prior to 1919, itself prohibited the sale of intoxicating liquors for beverage purposes in parts of the state while at the same time it superseded or repealed the former constitutional provisions and statutes as they applied in other parts of the state. In other words, this amendment had the effect of making the normal status of certain areas in the state dry because the Constitution itself provided that it should remain unlawful to sell intoxicating liquors therein; and the normal status of other areas in the state wet, because of the absence of any constitutional provision or statute prohibiting the sale of intoxicating liquors therein. This accounts for the change in the grant of power to include the power to legalize as well as to prohibit. The only absolute prohibition retained in the Constitution not subject to the power of local option or of the Legislature to change was the open saloon. Provision for the general grant of the power of local option is to be found in subsection (b), wherein the Legislature is commanded to "enact a law or laws whereby the qualified voters of any county, justice's precinct or incorporated town or city, may, by a majority vote of those voting, determine from time to time" whether such sale "shall be prohibited or *legalized* within the prescribed limits." (Italics ours.) It further provides in the same connection that such laws "shall contain provisions for voting on the sale of intoxicating liquors of various types and various alcoholic content." Thus was the Legislature required, as in effect already said, to grant two kinds of optional power to the counties and subdivisions named, the power to prohibit and the power to legalize; the reason therefor being that in parts of the state the sale of intoxicating liquors was already prohibited by the Constitution itself and in other parts of the

state such sale was legal because of the absence of any prohibition thereof. Manifestly, there was no reason to grant the optional power to prohibit in areas where the Constitution itself prohibited nor the optional power to legalize in areas where it was already legal.

Subsection (c) is plainly self-executing. It vests no power in the Legislature, but only limits such power. It refers to "all counties, justice's precincts or incorporated towns or cities wherein the sale of intoxicating liquors had been prohibited by local option elections held under the laws of the State of Texas and in force at the time of the taking effect of Section 20, Article XVI of the Constitution of Texas." (1919 amendment.) It is important to determine the purpose or purposes of this reference. It manifestly served more than one important purpose. One, plainly expressed, is to provide, subject to the exception hereafter noticed, that therein "it shall continue to be unlawful to manufacture, sell, barter or exchange in any such county, justice's precinct or incorporated town or city, any spirituous, vinous or malt liquors or medicated bitters capable of producing intoxication or any other intoxicants whatsoever, for beverage purposes." Another purpose is thereby to designate and afford the means of identifying the areas in the state in which the declared prohibition was to remain in effect until changed by exercise of the granted optional power. Another purpose —or, more accurately, effect—is by implication to declare that in all other areas of the state such sale shall not be unlawful. Beyond any doubt, subsection (c) itself has the effect of dividing the entire area of the state into two classes, one normally wet and the other normally dry. Such is the status upon which the optional power to prohibit or legalize is thereafter to operate. The exercise of the granted optional power will produce the same results in normally wet areas as it did under the provision of article 16, § 20, prior to the amendment of 1919. It will produce the same result in the dry areas as hereinbefore pointed out in the supposed provision discussed.

It was not one of the purposes of the 1935 constitutional amendment, in designating such former dry areas, to revive thereby the local option law under which such areas became dry nor to revitalize local option elections by which such status

came into existence. Such law and elections had been superseded by the 1919 amendment and the Dean Act (Pen.Code 1925, art. 666 et seq., as amended) giving effect to the last-named amendment. If any law in addition to the constitutional provision was continued in force, it was certainly the Dean law. The law under which such areas became dry (the local option law) prohibited, in terms, the "sale of intoxicating liquors," but the declaration of the 1935 amendment as to what shall continue to be unlawful in the designated territory is "to manufacture, sell, barter or exchange * * * any spirituous, vinous or malt liquors or medicated bitters capable of producing intoxication or any other intoxicants whatsoever, for beverage purposes," the very language of the prohibition declared by the Dean law. If any other law is kept in force by the constitutional declaration "that it shall continue to be unlawful" to do certain things, which of two laws would it most naturally and reasonably be—one in force at the very time the constitutional provision was adopted, prohibiting the same things in the same terms, or one which for sixteen years had been repealed and when it did exist prohibited only one of the several things and that in different words?

Thus far we have spoken of the continued constitutional prohibition in certain areas and absence of it in others as if such status were permanent. This was only for the purpose of a clearer understanding. Such status exists subject to change in each class of areas by exercise of the granted optional power.

From the above-discussed constitutional designation of dry and wet areas there is, as already stated, a partial and limited exception from the area in which prohibition is expressly declared to continue. That exception is in words as follows: "Provided that this subsection shall not prohibit the sale of alcoholic beverages containing not more than 3.2 per cent alcohol by weight in cities, counties or political subdivisions thereof in which the qualified voters have voted to legalize such sale under the provisions of Chapter 116, Acts of the Regular Session of the 43rd Legislature." Const. art. 16, § 20(c), as adopted in 1935. For the sake of brevity, we may hereafter refer to the beverage thus described simply as 3.2. The cities, counties, and subdivisions thus referred to did not exist in other than areas which

were dry under local option law at the time of the 1919 amendment. There was never any occasion to hold such elections in areas that were wet at the time of the 1919 amendment. It was therefore natural to designate areas in which the sale of 3.2 was to continue to be legal as an exception from the more general designation of dry areas. Just as there was no purpose in the general designation of dry areas to revive repealed laws or give new effect to old elections, so there was no purpose, in designating the subdivisions coming within this exception from dry territory, to validate said chapter 116, Acts 43d Legislature (1933), see Vernon's Ann.P.C. art. 694a, or elections held under same. There was no reason which called for application of any principle of validation. It makes no difference whether said act or said election was void or valid. When, in a conveyance of land, reference is made to another deed for description either of the land conveyed, or of land excepted from a description given, it makes no difference whether the deed referred to be valid or void. The purpose of the reference will be equally served in either case. Suppose the 1933 amendment had never been adopted but that the Legislature had enacted said chapter 116, Acts 43d Legislature, just the same and that, in elections held under its purported authority, "qualified voters" had "voted to legalize the sale" of 3.2? Undoubtedly the act and the elections would, in that case, be void. But would that prevent a constitutional amendment from referring to such legislative act and the result of such elections for the obvious purpose of excepting the areas involved from those in which prohibition was declared to continue? By this exception, the subdivisions of the state in which, in elections under said chapter 116, a majority had "voted to legalize" as provided in said act, the constitutional amendment just as certainly declared shall until changed by the exercise of the power of local option remain wet as to the sale of 3.2 as it declared, in the more general designation of dry areas, that therein it shall continue to be unlawful to sell, etc., intoxicating liquors until such sale be legalized by the exercise of the power of local option.

Now let us consider more particularly to what conclusion the application of the foregoing to the facts of the instant case leads.

We shall consider first the effect of the county election of January 3, 1936. The record indicates that the parties attached importance to that election. It was not the kind of election which the Legislature has undertaken to provide for in said general laws, 44th Legislature (1935), art. 1, § 32 (Vernon's Ann.P.C. art. 666—32). It is therefore unnecessary to consider what would have been the effect of that kind of an election or whether it was one applicable to Eastland county. The election that was held was the kind provided for in article 1, section 40, of that act (Vernon's Ann.P.C. art. 666—40). The proposition voted for was, in the terms of said statute, "For legalizing the sale of vinous and malt liquors that do not contain alcohol in excess of four per cent (4%) by weight" and "Against legalizing the sale of vinous and malt liquors that do not contain alcohol in excess of four per cent (4%)." The election resulted in a failure to legalize. As to the sale of intoxicating liquors generally or the sale of any particular kind or alcoholic content of intoxicating liquors above 3.2, Eastland county was undoubtedly by the terms of the Constitution itself and said statute dry area. Therefore the election held was one appropriate under the circumstances. There could be no reason to prohibit what was already prohibited by the Constitution and statutes. The effect of the election, therefore, was simply a failure to legalize in Eastland county the sale of vinous and malt liquors with an alcoholic content of not exceeding, 4 per cent. The election had no effect upon the status, as wet or dry, of any subdivision of Eastland county. If there were wet subdivisions, they remained wet, and, if dry, they remained dry. Under no view could the election be regarded as registering the will of a majority of the voters of Eastland county *not to legalize* 3.2. No such proposition was submitted. It is possible that a majority of said voters would have favored legalizing 3.2 but would not favor legalizing vinous and malt liquors with a greater per cent. of alcoholic content. There would therefore be no inconsistency whatever between the action of a majority voting against legalizing the latter, but at the same time being in favor of legalizing the former. We think, therefore, there can be no serious contention that the election of January 3d has any important bearing upon the question at issue.

The precise question properly determinative of the issue in this suit is whether, under the 1935 amendment of said article and section of the Constitution and said act of the Legislature, designed to give effect thereto, was said precinct No. 6 wet area with respect to the sale of 3.2? It was such if said 1935 amendment had the effect of excepting justice's precinct No. 6 from the dry area embraced in Eastland county. Whatever its status, as wet or dry, with reference to the sale of 3.2, it is the same now as it was fixed by the Constitution. There has been no election either in that precinct or in Eastland county in which was involved a proposition to *prohibit* the sale of 3.2 or which included such sale.

This conclusion is in perfect accord with the recent decision in Coker v. Kmeicik (Tex.Com.App.) 87 S.W.(2d) 1076. According to the facts of that case, as they appear in the statement of it, the county election involved the proposition to *prohibit* and not the proposition to *legalize*. The county had previously voted to *legalize*. It thereby became wet area. The qualified voters of that county had thus exercised the optional power granted them to change the normal status fixed by the Constitution. The county being wet by the exercise of local option, the only appropriate election that could have been held was one having the effect to prohibit. If the sale of 3.2 was prohibited as the effect of the county election, then there became applicable the rule, "You can't have a wet precinct in a dry county." This, however, for the very forcible reasons discussed in Griffin v. Tucker, supra, and the other authorities cited in Coker v. Kmeicik, supra. Those reasons when applied to an election to *legalize* what was otherwise unlawful would produce precisely the opposite effect, as we have undertaken to show in the beginning of this opinion by the illustration there given.

The opinion in Walling v. King (Tex. Com.App.) 87 S.W.(2d) 1074, handed down the same day as that in the Coker Case, is different. That case appears to have been decided solely with reference to the 1933 amendment of the Constitution and said chapter 116, Acts 43d Leg. According to the statement of the case Childress county was in what is defined in the present statute as dry area. In the election held therein on August 26, 1933, the proposition voted upon was, as stated in the opinion, "Should beer be permitted within the county?" The election failed to carry. It was held that the city of Childress had no optional power to legalize. Throughout the opinion the county election was apparently treated the same as if it had been a proposition to prohibit the sale of beer in said county. If that assumption was correct and the Constitution and laws, under the existing circumstances, then authorized an election in the county to prohibit such sale, then the conclusion declared was undoubtedly correct for the same reason the decision in the Coker Case was correct. It seems to us, however, considering what was said and left unsaid in the opinion, probably due to the manner in which the case was presented, that the court did not really consider the question which appears to us to be controlling. By this we refer, of course, to the essential difference between an election to legalize what the Constitution prohibits in the absence of such legalization, and an election to prohibit what is lawful in the absence of such prohibition. The 1933 amendment did not make such difference so readily apparent as the 1935 amendment has done. The general provision for the grant of optional power under that amendment referred to elections to *"prohibit."* A process of construction was required to ascertain the intent, if any, in the 1933 constitutional amendment which is expressly declared in the 1935 amendment, namely, to grant the power and right to *legalize* the same as the power and right to *prohibit*.

The writer is therefore of the opinion that, since the decision in question had reference to a constitutional provision now wholly superseded and to a statute since expressly repealed and since the issues in the instant case arise upon a different constitutional provision and a different statute, that that opinion should not be given controlling effect in the decision of this case.

At the risk of becoming tedious, we cannot refrain from pointing out some of the consequences of a holding to the contrary. Take, for example, a county commissioners' precinct, consisting of two justice's precincts, which was dry at the time of the 1919 amendment, in a wet county. One justice's precinct, let us say, was overwhelmingly wet and had so voted prior to the adoption of prohibition in the commissioners' precinct. Under said 1935 amendment, that commissioners' precinct

is undoubtedly dry. Since the optional power is granted to change the dry or wet status of any territory by the exercise of the power and right of local option, how can that commissioners' precinct ever become wet if the justice's precincts therein have no authority to vote to legalize? No authority now exists to hold such an election in a commissioners' precinct. If each justice's precinct cannot vote separately to legalize, then the purported grant to justice's precincts, in including dry areas, of the power and right to legalize, is wholly ineffective. To declare such proposition is to hold that the 1935 amendment has made no provision, although it plainly purports to do so, for legalizing the sale of intoxicating liquors in the subdivisions of any county in which prohibition was by the Constitution continued subject to change by the exercise of the optional power to determine that such sale shall be legalized.

Suppose the county in which said commissioners' precinct is situated is one that for years certainly would not vote to prohibit. Is it not clear that the one justice's precinct in the dry commissioners' precinct wherein a majority of the voters, if given a chance would vote to legalize would have no true power or right of local option, such as both the Constitution and statutes plainly purport to give, if there cannot be a wet precinct in a dry area.

Again, if we are not correct in our conclusion, then in no county in the dry areas does any city, town, or other subdivision of such county have any optional power to *legalize* the sale of intoxicating liquors, although both the Constitution and statutes say that they shall have.

Suppose a county at the time of the 1919 amendment had become dry, not by a county vote, but by a vote of the four designated commissioners' precincts composing the entire area of the county. Can it be doubted that the 1935 amendment of the Constitution made that county all dry? And, if so, what possible difference can it now make that it became dry by the vote of subdivisions and not by the vote of the county? If the only authorized election that can be held is one in the county to prohibit what is already prohibited, then what becomes of the purported grant of authority to the subdivisions to determine if the sale of intoxicating liquors therein shall be legalized? What compelling reason could exist to require such a construction of the constitutional provision so patently at variance with the power and right which it plainly purports to confer? So far as we have seen, no other or better reason has been suggested than that "You can't have a wet subdivision in a dry county." That proposition was never true of a county whose territory, except one or more subdivisions, became dry by elections in the subdivisions and not in the county. It only resulted from giving effect to the optional power of a county to prohibit, as the discussion in Griffin v. Tucker, supra, plainly shows. That argument, when attempted to be applied to the exercise of optional power to counties and subdivisions thereof to legalize what is unlawful, is on a parity with one to the effect that in the Southern Hemisphere a man's noonday shadow always points north because that is undoubtedly the well-known rule in the Northern Hemisphere. The argument completely ignores the normal status of territory as wet and dry. It overlooks the unmistakable mandate of the Constitution to the Legislature to grant not simply the option to prohibit but also the option to legalize. It is idle to talk about an option to prohibit in a territory where the Constitution itself already prohibits, or to legalize in a territory where by the same authority it is already legal. Regardless of how such an election might be designated, at least until once the subdivisions have exercised the optional power given, the very circumstances will determine the real nature of an election to be one to prohibit something lawful, or to legalize something unlawful as the case may be.

It follows that in our opinion the mandamus should have been granted as prayed for, and that the judgment of the court below should be reversed and judgment here rendered for appellants to the effect that the writ of mandamus do issue.