

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS

R-462

PRICE DANIEL
ATTORNEY GENERAL

June 23, 1947

Hon. C. A. Pounds
County Attorney
Chambers County
Anahuac, Texas

Dear Mr. Pounds:

Opinion No. V-262

Re: Local option status of
Justice Precincts, Num-
bers 1, 2, 5 and 6 in
Chambers County.

You have requested an opinion concerning the local option
status of Justice Precincts Numbers 1, 2, 5 and 6 in Chambers County.
Due to the fact that you have set forth the pertinent facts concerning
each precinct in separate letters, and have requested a separate opinion
on the status of each precinct, we shall consider them in numerical order.
Your letter relating to Justice Precinct No. 1 is as follows:

"In the year 1898, a local option election was held in
Justice Precinct No. One of Chambers County, Texas, which
resulted in the sale of intoxicating liquors being prohibi-
ted therein and in 1933 a local option election was held in
said Precinct No. One to determine whether or not the sale
of 3.2 beer should be legalized which election resulted in
prohibiting the sale of such beer, and in 1936 a county-wide
election was held in said Chambers County to determine wheth-
er or not the sale of all alcoholic beverages should be le-
galized in said County, which election resulted in favor of
legalizing the sale of such beverages.

"Please be kind enough to advise me whether or not said
Precinct No. One should be classed as a wet area or a dry
area."

We assume throughout this opinion that all elections referred
to have been held in accordance with the constitutional and statutory
requirements in effect at the time of said elections and that they are
valid in all respects.

The election of 1898 which resulted in prohibiting the sale
of intoxicating liquors in Justice Precinct No. 1 was held under authority
of Article XVI, Section 20 of the Texas Constitution as adopted in 1891.
This provision was as follows:

"The Legislature shall at its first session enact a law
whereby the qualified voters of any county, justice's precinct,
town, city (or such subdivision of a county as may be designated

by the commissioners' court of said county), may by a majority vote, determine from time to time whether the sale of intoxicating liquors shall be prohibited within the prescribed limits."

Article XVI, Section 20, as above set out, remained in effect from 1891 until 1919 when the prohibition amendment was adopted. This provision, in part, stated:

"The manufacture, sale, barter and exchange in the State of Texas, of spirituous, vinous or malt liquors or medicated bitters capable of producing intoxication, or any other intoxicant whatever except for medicinal, mechanical, scientific or sacramental purposes, are each and all hereby prohibited."

The prohibition amendment of 1919 remained in effect until August 26, 1933, when at an election the so-called "beer amendment" was adopted. Article XVI, Section 20, as adopted in 1933, provided:

"Sec. 20 (a). The manufacture, sale, barter or exchange in the State of Texas of spirituous, vinous or malt liquors or medicated bitters capable of producing intoxication, or any other intoxicant whatever except vinous or malt liquors of not more than three and two-tenths per cent (3.2%) alcoholic content by weight, (except for medicinal, mechanical, scientific or sacramental purposes) are each and all hereby prohibited. The Legislature shall enact laws to enforce this Section, and may from time to time prescribe regulations and limitations relative to the manufacture, sale, barter, exchange or possession for sale of vinous or malt liquors of not more than three and two-tenths per cent (3.2%) alcoholic content by weight; provided the Legislature shall enact a law or laws whereby the qualified voters of any county, justice's precinct, town or city, may, by a majority vote of those voting, determine from time to time whether the sale for beverage purposes of vinous or malt liquors containing not more than three and two-tenths per cent (3.2%) alcohol by weight shall be prohibited within the prescribed limits; and provided further that in all counties in the State of Texas and in all political subdivisions thereof, wherein the sale of intoxicating liquors had been prohibited by local option elections held under the laws of the State of Texas and in force at the time of the taking effect of Section 20, Article 16, of the Constitution of Texas, it shall continue to be unlawful to manufacture, sell, barter or exchange in any such county or in any such political subdivision thereof, any spirituous, vinous or malt liquors or medicated bitters, capable of producing intoxication or any other intoxicant whatsoever, unless and until a majority

of the qualified voters in said county or political sub-
division thereof voting in an election held for such pur-
pose shall determine it to be lawful to manufacture, sell,
barter and exchange in said county or political subdivision
thereof vinous or malt liquors containing not more than
three and two-tenths per cent (3.2%) alcoholic content by
weight, and the provision of this subsection shall be self-
enacting." (Emphasis added.)

The effect of this amendment is best expressed in this language
appearing in the case of Houchins v. Plainos, 110 S. W. (2d) 549:

"The effect of this provision was to make the area of
any county, justice's precinct, or town, or city, which was
dry at the time the entire state became dry under the amend-
ment of 1919, still dry territory; but with the privilege of
becoming wet territory as to vinous and malt liquors of not
more than three and two-tenths per cent alcoholic content by
so voting at an election held in and for the exact area that
had originally voted dry." (Emphasis added.)

It appears, therefore, that upon the adoption of the constitu-
tional amendment in 1933, Justice Precinct No. 1 was preserved as a "dry"
area by virtue of the election of 1898, which resulted in the prohibition
of intoxicating liquors. However, Article XVI, Section 20, as adopted
in 1933 gave to a justice precinct the right to hold an election for the
purpose of determining whether or not vinous and malt liquors of not more
than 3.2 per cent alcohol by weight should be legalized. Under this au-
thority, an election was held which resulted in Justice Precinct No. 1
maintaining its "dry" status.

This amendment of 1933 remained in effect until August 24, 1935,
when at an election, Article XVI, Section 20, was again amended to read:

"(a) The open saloon shall be and is hereby prohibited.
The Legislature shall have the power, and it shall be its
duty to define the term 'open saloon' and enact laws against
such.

"Subject to the foregoing, the Legislature shall have
the power to regulate the manufacture, sale, possession and
transportation of intoxicating liquors, including the power
to establish a State Monopoly on the sale of distilled liq-
uors.

"(b) The Legislature shall enact a law or laws whereby
the qualified voters of any county justice's precinct or in-
corporated town or city, may, by a majority vote of those
voting, determine from time to time whether the sale of

intoxicating liquors for beverage purposes shall be prohibited or legalized within the prescribed limits; and such laws shall contain provisions for voting on the sale of intoxicating liquors of various types and various alcoholic content.

"(c) In all counties, justice's precincts or incorporated towns or cities wherein the sale of intoxicating liquors had been prohibited by local option elections held under the laws of the State of Texas and in force at the time of the taking effect of Section 20, Article XVI of the Constitution of Texas, it shall continue to be unlawful to manufacture, sell, barter or exchange in any such county, justice's precinct or incorporated town or city, any spirituous, vinous or malt liquors or medicated bitters capable of producing intoxication or any other intoxicants whatsoever, for beverage purposes unless and until a majority of the qualified voters in such county or political subdivision thereof voting in an election held for such purpose shall determine such to be lawful; provided that this subsection shall not prohibit the sale of alcoholic beverages containing not more than 3.2 per cent alcohol by weight in cities, counties or political subdivisions thereof in which the qualified voters have voted to legalize such sale under the provisions of Chapter 116, Acts of the Regular Session of the 43rd Legislature."

This amendment, commonly referred to as the repeal amendment, is the constitutional provision with respect to local option which is in effect at the present time. It is also the provision under which the 1936 county-wide election in Chambers County was held. We again refer to language in the case of Houchins v. Plainos, supra, interpreting the amendment of 1935:

"By the terms of this amendment the entire State, as such, is again made wet as to all intoxicating liquors; but with certain exceptions and limitations. In effect, this amendment contains provisions which make any county, justice's precinct, or city, or town dry which was dry at the time it became effective. In other words, this amendment preserves the status quo as to dry areas as they existed at the time it became effective. It therefore preserved as dry any county, justice's precinct, or city, or town which was dry when it went into effect. Of course, any such area has the right to become wet by so voting at an election legally ordered and held for that purpose under present local option statutes. In this connection, however, we again note that such election must be held in the same area that originally voted dry." (Emphasis added.)

In November, 1935, less than three months after the adoption of Article XVI, Section 20, as now in effect, the Legislature passed the Texas Liquor Control Act. Article I, Section 23 of this Act, codified as Article 666-23, Vernon's Penal Code, defines "dry" and "wet" areas as follows:

"Whenever the term 'dry area' is used in this Act it shall mean and refer to all counties, justice precincts, incorporated cities or towns wherein the sale of alcoholic beverages had been prohibited by valid local option elections held under the laws of the State in force at the time of the taking effect of Section 20, Article XVI, Constitution of Texas in the year 1919. It likewise shall mean and refer to any such areas where sale of such alcoholic beverages shall be prohibited under the terms of this Act.

"The term 'wet area' shall mean and refer to all other areas of the State . . . ."

Under the constitutional and statutory provisions above set out and under the interpretation given these various provisions by the courts, it appears beyond question that after the election of 1933, Justice Precinct No. 1 remained a "dry" area. The next question for us to determine is the effect on Justice Precinct No. 1 of the county-wide election held in 1936.

The appellate courts of Texas have uniformly construed the local option election provisions to protect the "dry" status of the smaller subdivisions of the whole. The earliest authority we have found supporting this contention is the case of Aaron v. State, decided by the Supreme Court in 1895 and reported in 29 S. W. 267. Judge Hurt, speaking for the court in this case, used this language:

"It appears from the record that before the sale was made an election had been held under the act of 1893 for the entire county, which resulted in the defeat of prohibition. It is contended this defeat abrogated the law in Precinct 8. In other words, if local option is legally in force in a precinct, made so by election in that precinct, that a subsequent election, held for the entire county, resulting against prohibition, has the effect to repeal or abrogate local option in that said precinct. To this proposition we cannot agree. By reference to the various provisions of the local option statutes we are informed that the people of the entire county cannot express their views upon this subject so as to defeat or repeal local option in any subdivision of the county. Nor can the people of a precinct by a vote defeat prohibition in any subdivision of that precinct, town or city. The county may force prohibition by a

vote over precincts which are not in favor of it, and so may precinct over cities, towns, or subdivisions thereof that may not be in favor of it, but cannot force, by vote, repeal of it, in any town, city, or subdivision thereof. The people of the county, outside of the territory to be affected, have no right to vote at all as to the law in that subdivision. . . ." (Emphasis ours.)

The Aaron case has been cited frequently in recent cases. The above language was quoted in the case of Jackson v. State, decided by the Court of Criminal Appeals in 1938 and reported in 118 S. W. (2d) 313. Judge Graves, speaking for the Court, said:

"It has long been recognized by this court's decisions that when the voters of any justice precinct have, through the medium of an election properly called in and for such precinct, or political subdivision of any county, determined by a majority vote that the sale of intoxicating liquors shall be prohibited in such precinct or other subdivision, that it shall continue to be thus unlawful until the voters of such precinct or subdivision shall determine otherwise. In other words, intoxicating liquors, once having been voted out, can only be voted back by a majority vote of the identical territory that had voted such liquors out. To this effect is our holding in the early case of Aaron v. State, 34 Tex. Cr. R. 103, 29 S. W. 267, in which Judge Hurt said . . . ." (Emphasis ours.)

To the same effect are the cases of Griffin v. Tucker, decided by the Supreme Court in 1909 and reported in 102 Tex. 420, 118 S. W. 635; Goodie Goodie Sandwich, Inc., v. State, decided by the Dallas Court of Civil Appeals in 1940, and reported in 138 S. W. (2d) 906; Coker, County Judge v. Kmeicik, decided by the Commission of Appeals in 1935 and reported in 87 S. W. (2d) 1076; Powell v. Smith, decided by the Fort Worth Court of Civil Appeals in 1936, and reported in 90 S. W. (2d) 942.

It is, therefore, the opinion of this department that the county-wide local option election of 1936 resulting in Chambers County legalizing all alcoholic beverages did not affect the "dry" status of Justice Precinct No. 1, and said precinct remained "dry".

Your letter with respect to Justice Precinct No. 2 of Chambers County is as follows:

"In the year 1916 a local option election was held in Justice Precinct No. Two of Chambers County, Texas, which resulted in the sale of intoxicating liquors being prohibited therein; in 1933, a local option election was held in said Precinct No. Two to determine whether or not the sale of 3.2

beer should be legalized, which election resulted in legalizing the sale of such beer, and in 1936 a county-wide election was held in said Chambers County to determine whether or not the sale of all alcoholic beverages should be legalized in said County, which election resulted in legalizing the sale of such beverages.

"Please be kind enough to advise me whether or not said Precinct No. Two should be classed as a wet area or a dry area."

Subsection (c) of Section 20 of Article XVI expressly states that the sale of alcoholic beverages containing not more than 3.2 per cent alcohol by weight shall not be prohibited in political subdivisions which had voted to legalize such sale. This language is quoted as follows:

". . . . provided that this subsection shall not prohibit the sale of alcoholic beverages containing not more than 3.2 per cent alcohol by weight in cities, counties or political subdivisions thereof in which the qualified voters have voted to legalize such sale under the provisions of Chapter 116, Acts of the Regular Session of the 43rd Legislature."

In addition to Article 666-23, Vernon's Penal Code, already quoted, the Texas Liquor Control Act contained a further provision with regard to local option status. This provision is Article II, Section 2 of the above Act, codified as Article 667-2 of Vernon's Penal Code and is, in part, as follows:

". . .

"It shall continue to be unlawful to manufacture, sell, barter, or exchange in any county, justice precinct, or incorporated city or town any beer except in counties, justice precincts, or incorporated cities or towns wherein the voters thereof had not adopted prohibition by local option elections held under the laws of the State of Texas and in force at the time of taking effect of Section 20, Article 16 of the Constitution of Texas in 1919; except that in counties, justice precincts, or incorporated cities or towns wherein a majority of the voters have voted to legalize the sale of beer in accordance with the local option provisions of Chapter 116, Acts of the Regular Session of the Forty-third Legislature, or in accordance with the local option provisions, Sections 32 to 40, inclusive, of Article I, of House Bill No. 77, General Laws of Texas, Second Called Session of the Forty-fourth Legislature, or any amendments thereof, beer as herein defined may be manufactured, distributed and sold as herein provided. . . ."

This provision, as does the constitutional amendment of 1935, recognizes the status of those subdivisions which had legalized 3.2 beer under the 1933 amendment of the Texas Constitution.

We direct your attention to the case of Tillerson v. State, decided by the Court of Criminal Appeals in 1942, and reported in 159 S. W. (2d) 502. In this case, a county-wide local option election had legalized the sale of 3.2 per cent beer in the county. The court used this language:

"The definition of a 'dry area' and of a 'wet area' seem to be relative terms as set out in Subdivision 23 of Art. 666, Vernon's Annotated Penal Code, and from the facts stated in the foregoing quotation from the court's qualification of the bill it would appear to be the correct conclusion that Dallas County is a 'dry area' as to the sale of whiskey and other alcoholic beverages containing more than 3.2 per cent alcohol by weight. At the same time, it is a 'wet area' as to beer and those liquors which do not contain more than 3.2 per cent of alcohol by weight."

In the case of Whitmire v. State, 94 S. W. (2d) 742, the Court of Criminal Appeals, speaking through Judge Hawkins, said:

"We call attention of prosecutors and trial judges to the fact that the description in the indictment or information of the liquor dealt with in some localities must be kept in mind because in some places in the state under our present laws a given location may be a 'dry area' (as now designated) so far as the sale, etc., of spirituous intoxicating liquor is concerned, and at the same time be 'wet area' as it relates to sales, etc., of malt liquor, although such liquor may be intoxicating."

From the facts presented in your letter and under the reasoning above, it appears that Justice Precinct No. 2, under the amendment of 1933 was preserved as a "dry area" by virtue of an election held in 1916, and that at an election held in 1933, under authority of the 1933 amendment, that 3.2 per cent beer was legalized.

It is, therefore, the opinion of this Department that Justice Precinct No. 2 of Chambers County is a "dry area" as to the sale of whiskey and other alcoholic beverages containing more than 3.2 per cent alcohol by weight, and is a "wet area" as to beer and those beverages which do not contain more than 3.2 per cent of alcohol by weight.

Your letter setting forth the facts with respect to Justice Precinct No. 5 of Chambers County is as follows:

"In the year 1913 a local option election was held in Justice Precinct No. Five of Chambers County, Texas, which resulted in the sale of intoxicating liquors being prohibited therein; in 1933 a local option election was held in said Precinct No. Five to determine whether or not the sale of 3.2 beer should be legalized, which election resulted in legalizing the sale of such beer, and in 1936 a countywide election was held in said Chambers County to determine whether or not the sale of all alcoholic beverages should be legalized in said County, which election resulted in legalizing the sale of such beverages.

"Please be kind enough to advise me whether or not said Precinct No. Five should be classed as a wet area or a dry area."

Under the same reasoning applied in the case of Justice Precinct No. 2, we are of the opinion that Justice Precinct No. 5 of Chambers County is a "dry" area as to the sale of whiskey and other alcoholic beverages containing more than 3.2 per cent alcohol by weight, and a "wet" area as to beer and those beverages which do not contain more than 3.2 per cent of alcohol by weight.

Your letter concerning Justice Precinct No. 6 of Chambers County is as follows:

"In the year 1916, a local option election was held in Justice Precinct No. Six of Chambers County, Texas, which resulted in the sale of intoxicating liquors being prohibited therein; in 1933 a local option election was held in said Precinct No. Six to determine whether or not the sale of 3.2 beer should be legalized, which election resulted in legalizing the sale of such beer, and in 1936 a countywide election was held in said Chambers County to determine whether or not the sale of all alcoholic beverages should be legalized in said County, which election resulted in legalizing the sale of such beverages.

"Please be kind enough to advise me whether or not said Precinct No. Six should be classed as a wet area or a dry area."

It is the opinion of this department under the authorities cited above that Justice Precinct No. 6 of Chambers County, Texas, is a "dry" area as to the sale of whiskey and other alcoholic beverages containing more than 3.2 per cent of alcohol by weight, and a "wet" area as to beer and those beverages which do not contain more than 3.2 per cent alcohol by weight.

## SUMMARY

The county-wide election in Chambers County in 1936 which resulted in legalizing the sale of all alcoholic beverages did not affect the "dry" status of Justice Precinct No. 1 of said County.

Justice Precincts Nos. 2, 5 and 6 of Chambers County were "dry" areas as to the sale of whiskey and other alcoholic beverages containing more than 3.2 per cent alcohol by weight and "wet" areas as to beer and those beverages which do not contain more than 3.2 per cent alcohol by weight, and the county-wide election in Chambers County in 1936 did not affect the status of Justice Precincts Nos. 2, 5 and 6.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By /s/ Clarence Y. Mills
Clarence Y. Mills
Assistant.

CYM:rt:lm

APPROVED:

/s/ Price Daniel

ATTORNEY GENERAL.