

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

June 12, 1947

Honorable Perry L. Jones    Opinion No. V-250
County Attorney
Travis County            Re: Local option status of
Austin, Texas               Common School District
                               No. 43 now contained in
                               Justices' Precincts Nos.
                               5 and 6 in Travis County.

Dear Mr. Jones:

You have requested an opinion as to the local option status of Common School District No. 43 now located in Justice's Precincts Nos. 5 and 6 in Travis County. Your letter is quoted in full as follows:

"I am writing to ask your opinion as to the wet or dry status of Common School District No. 43, being St. Elmo and Longview Consolidated School Districts located in Travis County, Texas.

"The facts are: On January 21, 1918, in a local option special election, Common School District No. 43, composed of St. Elmo and Longview School Districts, voted DRY. Common School District No. 43 was at the time of that election situated partly in Justice Precincts Nos. 5 and 6, and is now so situated.

"On September 30, 1935, in a local option special election for Justice Precinct No. 5, the sale of beer containing not more than 3.2% of alcohol by weight was approved.

"On December 27, 1935, in a local option election for Justice Precinct No. 5, there was a tie vote and the Commissioners' Court ordered that the status remain as if no election had been held on the date of December 27, 1935.

"On March 25, 1939, in a local option election Justice Precinct No. 5 voted WET, permitting the sale of all alcoholic beverages.

"On October 24, 1946, in a local option election, Justice Precinct No. 6 voted against sale of all alcoholic beverages.

"On November 16, 1946, in a local option election, Justice Precinct No. 5, voted WET.

"You will note there has not been a local option election in the original Common School District No. 43, St. Elmo and Longview Consolidated Schools since it was voted DRY on January 21, 1918. In view of this fact and under the Supreme Court's holding in the case of HOUCHINS VS. PLAINOS, ET AL., 110 S.W. (2d) 549, is the Common School District No. 43 dry until an election is held in the exact same area that originally voted DRY? Or, did that part of Common School District No. 43 situated in Justice Precinct No. 5 become 'wet area' when Justice Precinct No. 5 became 'wet area'?"

We assume throughout this opinion that all elections set forth in your letter were held in accordance with all statutory and constitutional provisions in effect at the time of the elections, and that such elections were valid in all respects.

The authority under which the 1918 election in Common School District No. 43 was held was Article XVI, Section 20 of the Constitution of Texas as amended in 1891, and as quoted below:

"The legislature shall at its first session enact a law whereby the qualified voters of any county, justice's precinct, town, city (or such subdivision of a county as may be designated by the commissioners' court of said county) may by a majority vote determine from time to time whether the sale of intoxicating liquors shall be prohibited within the prescribed limits."

Article XVI, Section 20 of the Texas Constitution as adopted in 1891 and as quoted above remained unchanged un-

til 1919 when the prohibition amendment was substituted
for the above local option provision.  The prohibition
amendment of 1919 read in part as follows:

> "The manufacture, sale, barter and exchange
> in the State of Texas, of spirituous, vinous or
> malt liquors or medicated bitters capable of pro-
> ducing intoxication, or any other intoxicant what-
> ever except for medicinal, mechanical, scientific
> or sacramental purposes, are each and all hereby
> prohibited."

The effect of this amendment of 1919 is best ex-
pressed by Judge Critz in the case of Houchins vs. Plain-
os decided by the Supreme Court of Texas in 1937 and re-
ported in 110 S. W. (2d) 549:

> "In 1919 section 20 of article 16 of our
> Constitution was again amended.  The undoubted
> effect of this amendment was to abolish all
> local option areas, as such, and to constitute
> the entire state of Texas dry territory; not
> by virtue of any previous local option elec-
> tions, but by virtue of the 1919 amendment it-
> self."  (Emphasis added).

This prohibition amendment remained in effect
until 1933 when the so-called "beer amendment" was a-
dopted.  This amendment is quoted in full as follows:

> "The manufacture, sale, barter or exchange
> in the State of Texas of spirituous, vinous or
> malt liquors or medicated bitters capable of
> producing intoxication or any other intoxicant
> whatever except vinous or malt liquors of not
> more than three and two-tenths per cent (3.2%)
> alcoholic content by weight, (except for medi-
> cinal, mechanical, scientific, or sacramental
> purposes) are each and all hereby prohibited.
> The Legislature shall enact laws to enforce
> this Section, and may from time to time pres-
> cribe regulations and limitations relative to
> the manufacture, sale, barter, exchange, or
> possession for sale of vinous or malt liquors
> of not more than three and two-tenths per cent
> (3.2%) alcoholic content by weight; provided
> the Legislature shall enact a law or laws where-
> by the qualified voters of any county, Justice's
> precinct, town or city may, by a majority vote

of those voting, determine from time to time whether the sale for beverage purposes of vinous or malt liquors containing not more than three and two-tenths per cent (3.2%) alcohol by weight shall be prohibited within the prescribed limits; and provided further that in all counties in the State of Texas and in all political subdivisions thereof, wherein the sale of intoxicating liquors had been prohibited by local option elections held under the laws of the State of Texas and in force at the time of the taking effect of Section 20, Article 16, of the Constitution of Texas, it shall continue to be unlawful to manufacture, sell, barter or exchange in any such county or in any such political subdivision thereof, any spirituous, vinous or malt liquors or medicated bitters, capable of producing intoxication or any other intoxicant whatsoever, unless and until a majority of the qualified voters in said county or political subdivision thereof voting in an election held for such purpose shall determine it to be lawful to manufacture, sell, barter and exchange in said county or political subdivision thereof vinous or malt liquors containing not more than three and two-tenths per cent (3.2%) alcoholic content by weight, and the provisions of this subsection shall be self-enacting." (Emphasis added).

We again refer to the case of Houchins vs. Plaines, cited above, for an interpretation of the language of Article XVI, Section 20 as adopted in 1933:

"The effect of this provision was to make the area of any county, justice's precinct, or town, or city, which was dry at the time the entire state became dry under the amendment of 1919, still dry territory; but with the privilege of becoming wet territory as to vinous and malt liquors of not more than three and two-tenths per cent alcoholic content by so voting at an election held in and for the exact area that had originally voted dry . . . It may be argued that this amendment did not save the areas of towns and cities as dry territory which had theretofore so voted, because it only saves counties and political subdivisions thereof. We are fully aware of the fact that

ordinarily towns and cities are not classed
as political subdivisions of counties. In
spite of this, we think the phrase 'any poli-
tical subdivision thereof,' as used in this
amendment, was intended to cover and include
towns and cities." (Emphasis added),

Later in the opinion, this language is used:

"In other words, the phrase 'any such
political subdivision thereof' as used in
this amendment, referred to and included
the area of any justice's precinct, or town
or city."

Although we have cited the 1933 amendment toge-
ther with a decision interpreting it, we have done so
purely for historical purposes and to show the effect
given language which appears in the later amendment.
It is not necessary for us to determine our question
under the 1933 amendment, for at an election held on
August 24, 1935, Section 20 of Article XVI was again
amended to read as follows:

"(a) The open saloon shall be and is here-
by prohibited. The Legislature shall have the
power, and it shall be its duty to define the
term 'open saloon' and enact laws against such.

"Subject to the foregoing, the Legislature
shall have the power to regulate the manufacture,
sale, possession and transportation of intoxicat-
ing liquors, including the power to establish a
State Monopoly on the sale of distilled liquors.

"(b) The Legislature shall enact a law or
laws whereby the qualified voters of any county,
justice's precinct or incorporated town or city,
may, by a majority vote of those voting, deter-
mine from time to time whether the sale of in-
toxicating liquors for beverage purposes shall
be prohibited or legalized within the prescribed
limits; and such laws shall contain provisions
for voting on the sale of intoxicating liquors
of various types and various alcoholic content.

"(c) In all counties, justice's precincts,
or incorporated towns or cities wherein the sale
of intoxicating liquors had been prohibited by
local option elections held under the laws of

the State of Texas and in force at the time of the taking effect of Section 20, Article XVI of the Constitution of Texas, it shall continue to be unlawful to manufacture, sell, barter or exchange in any such county, justice's precinct or incorporated town or city, any spirituous vinous or malt liquors or medicated bitters capable of producing intoxication or any other intoxicants whatsoever, for beverage purposes, unless and until a majority of the qualified voters in such county or political subdivision thereof voting in an election held for such purpose shall determine such to be lawful; provided that this subsection shall not prohibit the sale of alcoholic beverages containing not more than 3.2 per cent alcohol by weight in cities, counties or political subdivisions thereof in which the qualified voters have voted to legalize such sale under the provisions of Chapter 116, Acts of the Regular Session of the 43rd Legislature." (Emphasis added).

This constitutional provision is the one now in effect in this state, and the one under which the question presented by you must be decided. The effect of this repeal amendment is to legalize the sale of intoxicating liquors anywhere in Texas except in those specific areas named in subsection (c) which had voted to prohibit the sale of intoxicating liquors prior to the taking effect of Section 20 of Article XVI. In support of this contention we quote again from the Houchins case, supra:

"By the terms of this amendment, the entire State, as such is again made wet as to all intoxicating liquors; but with certain exceptions and limitations. In effect, this amendment contains provisions which make any county, justice's precinct, or city, or town, dry which was dry at the time it became effective. In other words, this amendment preserves the status quo as to dry areas as they existed at the time it became effective. It therefore preserved as dry any county, justice's precinct, or city, or town, which was dry when it went into effect." (Emphasis added.)

Under the maxim expressio unius est exclusio alterius, (the expression of one thing is exclusive of another), it is our opinion that any subdivision not a county, justice's precinct, or an incorporated town or city at the time it voted "dry" was not preserved as a "dry" area by this section of the Constitution. We are aware

that in the latter part of subsection (c) after the specific enumeration of counties, justice's precincts, and incorporated towns and cities this language is used: "in such county or political subdivision" and "cities, counties, or political subdivisions thereof." However, we think it clear that the words "political subdivision" refer to those political subdivisions specifically set forth in the first part of subsection (c), namely counties, justice's precincts and incorporated towns and cities. The Supreme Court of Texas in the language already quoted interpreting the 1933 provision construed the words "political subdivision" as including the area of any justice's precinct, or town, or city. Such a contention is further supported by the doctrine of ejusdem generis, to the effect that when general words follow specific words in an enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.

That the Legislature interpreted the constitutional provision as preserving the dry status only in counties, justice's precincts and incorporated cities or towns which had voted dry prior to 1919, is shown in two provisions of the Texas Liquor Control Act.

Article 1, Section 23 of the Texas Liquor Control Act, codified as Article 666-23 of Vernon's Penal Code, reads in part as follows:

"Whenever the term 'dry area' is used in this Act, it shall mean and refer to all counties, justice precincts, incorporated cities or towns wherein the sale of alcoholic beverages had been prohibited by valid local option elections held under the laws of the State in force at the time of the taking effect of Section 20, Article XVI, Constitution of Texas in the year 1919."

Article 2, Section 2 of the above Act, codified as Article 667-2 of Vernon's Penal Code, is in part as follows:

"It shall continue to be unlawful to manufacture, sell, barter or exchange in any county, justice precinct, or incorporated city or town any beer except in counties, justice precincts, or incorporated cities or towns wherein the voters thereof had not adopted prohibition by

local option elections held under the laws of
the State of Texas and in force at the time of
taking effect of Section 20, Article 16 of the
Constitution of Texas in 1919; . . ."

Both the constitutional provision of 1935 and
the legislative interpretation of that provision as con-
tained in the above quoted language of the Texas Liquor
Control Act contains no language which could possibly
be construed as preserving the "dry" status of a common
school district. We have carefully considered the lan-
guage in the Houchins case to the effect that when an
area voted dry it remained dry until it was voted wet
at a subsequent election held in and for the same iden-
tical area which had theretofore voted "dry". However,
in the Houchins case the subdivision considered was an
area which had originally voted "dry" as an incorporated
city and later dissolved its corporate existence and
was annexed to a "wet" city. We think the language of
the Houchins case insofar as it lays down a requirement
for an election in the same identical area which had o-
riginally voted "dry" is restricted to the areas orig-
inally voting "dry" as counties, justice's precincts or
incorporated towns or cities.

It is, therefore, the opinion of this department
that Article XVI, Section 20 as adopted in 1919 abolished
all local option areas in Texas, and that the repeal amend
ment of 1935, now in effect, preserved only those areas
as "dry" which had voted "dry" prior to 1919 as a county,
justice's precinct or as an incorporated town or city.
Since Common School District No. 43 did not vote in 1918
as one of the subdivisions specifically mentioned, the
area embraced within its original boundaries must depend
for its local option status on the county, the justice's
precinct or the incorporated city or town in which it is
located. Since you have stated in your request that Jus-
tice Precinct No. 6 which includes the East St. Elmo box
and has in its last election voted against the sale of
all alcohloic beverages we are of the opinion that East
St. Elmo is a "dry" area. You have also stated that Jus-
tice Precinct No. 5 which includes the West St. Elmo box
has in its last election voted to legalize the sale of
intoxicating liquors. We are, therefore, of the opinion
that West St. Elmo is a "wet" area.

## SUMMARY

1. Article XVI, Section 20, of the Texas Con-

stitution as adopted in 1935 and now in effect did not preserve Common School District No. 43 as a "dry" area. This constitutional provision preserved as "dry" only those areas which had voted "dry" prior to 1919 as a county, justice's precinct, or as an incorporated town or city.

2. East St. Elmo is a "dry" area by virtue of the fact that Justice Precinct No. 6, of which it is a part, is "dry".

3. West St. Elmo is a "wet" area by virtue of the fact that Justice Precinct No. 5, of which it is a part, is "wet."

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Clarence Y. Mills
Clarence Y. Mills
Assistant


APPROVED

Price Daniel
ATTORNEY GENERAL

CYM/JMc:jrb