O. W. HOUCHINS V. JOHN PLAINOS AND SAVO PLAINOS.

No. 7304.   Decided November 24, 1937.
Rehearing overruled December 29, 1937.
(110 S. W., 2d Series, 549.)

*William McCraw,* Attorney General, *Leon O. Moses, Vernon Coe, Victor Bouldin, Sam Lane, M. C. Martin,* Assistants Attorney General, *Lloyd. Davidson, Jr.,* Legal Investigator, and *Spurgeon Bell,* Assistant District Attorney, both of Houston, for plaintiff in error.

Where a district has legally adopted local option, a subsequent election, having for its purpose the consolidation of said district with a city which is not local option, does not have the effect of changing the status of the district from local option to "wet." Smith v. City of Port Arthur, 62 S. W. (2d) 385; Boone v. State, 10 Texas Crim. App. 418; Cohen v. City of Houston, 205 S. W. 757; City of Houston v. City of Magnolia Park, 115 Texas 101, 276 S. W. 685.

*Sidney Benbow, Richard Burns, Andrews, Kelley, Kurth & Campbell,* all of Houston, for defendants in error.

The constitutional amendment adopted in 1919 repealed all local option laws, and the amendment of 1935, known as the "wet amendment," did not revive or resurrect the former local option status of any of the political subdivisions of the State, but only designated as "dry" those counties, justice's precincts and incorporated towns or cities wherein local option was in

force when the amendment of 1919 was adopted, and the particular territory herein involved, not being in existence as a city or town, at that time, having been incorporated in the City of Houston, it could not be included in the designation. Teal v. State, 90 S. W. (2d) 651; Ex parte Mills, 79 S. W. 555; Ex parte Heyman, 78 S. W. 349; Sutherland on Statutory Construction, Vol. 2, par. 572.

MR. JUSTICE CRITZ delivered the opinion of the Court.

Upon the affidavit of one O. W. Houchins the Honorable William McCraw, Attorney General of Texas, filed this suit in the district court of Harris County, Texas, against John and Savo Plainos to enjoin them, and each of them, from selling or in any way distributing vinous or malt beverages containing alcohol in excess of one-half of one per cent. in the territory comprised within the area of what was once the duly incorporated City of Houston Heights, in Harris County, Texas. On presentation to him of the duly verified petition, the district court entered an order granting a temporary injunction as prayed for by the Attorney General. Later Plainos appeared in the district court and moved to dissolve the temporary injunction. After a hearing the motion was overruled, and Plainos appealed to the Galveston Court of Civil Appeals. On final hearing in the last mentioned court the judgment of the district court was reversed and the temporary injunction in all things dissolved. 106 S. W. (2d) 745. The case is before this Court on writ of error granted on application of the Attorney General. We pause here to remark that this suit was filed by authority of the pertinent provisions of House Bill No. 77, Chapter 467, Acts Second Called Session, 44th Legislature, effective November 22, 1935. Also, the act involved is generally known as "Texas Liquor Control Act of 1935." Such act appears in Vernon's Texas Statutes, 1936, as Articles 666 and 667, Penal Code.

The case was tried in the district court on an agreed statement of facts. Such statement is fairly brief, and we here reproduce it in full.

"AGREED STATEMENT OF FACTS.

"It is hereby agreed by and between counsel for plaintiff and defendant that the following matters are true and correct and the same are hereby admitted in evidence in the above cause, to-wit:

"1. John Plainos and Savo Plainos are the owners of the place of business located at 357 th W. 19th Street, Houston, Harris County, Texas, together with the stock of beer, merchandise,

lease and fixtures therein, as provided by House Bill No. 77, Acts of the Second Called Session of the 44th Legislature of the State of Texas, by reason of license No. 5299 issued by the proper authorities of the State of Texas.

"2. That the defendant is engaged in the business of selling vinous and malt beverages containing alcohol in excess of one-half of one per cent by volume.

"3. That defendant is a person legally entitled to such license and has complied with all laws necessary to obtain the same, and as such license was duly issued and delivered to him by the proper authorities of the State of Texas, he is entitled to operate said place of business, unless it is found that such place of business was and is located within what is termed a 'dry area,' as defined by the said Texas Liquor Control Act and the Constitution of the State of Texas.

"4. That on September 15, 1912, Houston Heights, where the defendant's place of business is now located, was a separate municipality known as the City of Houston Heights, and as such separate municipality there was held in and for the City of Houston Heights a valid local option election wherein the qualified voters therein adopted local option and determined that the sale of liquor should not be permitted within said territory.

"5. That on February 20, 1918, through a vote of the people of Houston Heights, the independent municipality of Houston Heights was dissolved, and that territory or area was annexed to the City of Houston, and since that time has been an integral part of the City of Houston, and Houston Heights as an independent municipality with a separate form of government has not existed since such time.

"6. That since September 15, 1912, when local option was adopted in the municipality of Houston Heights, there has never been held a local option election in and for the territory which was known as Houston Heights where defendant's place of business is now located, wherein local option was repealed, nor has there been any election held since that time wherein the sale of any vinous or malt beverages in excess of one-half of one per cent of alcohol by volume has been legalized.

"6a. There has never been a local option election held in and for the City of Houston.

"7. That the territory or area which was formerly an independent municipality and known as Houston Heights is not co-extensive with a justice's precinct, a Commissioner's precinct, a city, town or county.

"8. We further agree that the following is the only question of law involved in this cause:

"Is that territory which was formerly the City of Houston Heights, and now being a part of the City of Houston, Harris County, Texas, a wet or a dry area?"

As shown by the above agreed statement of facts this case involves but one question, and that a question of law. The question is: "Is that territory which was formerly the City of Houston Heights, and now being a part of the City of Houston, Harris County, Texas, a wet or a dry area?" By this we mean: Is the sale of intoxicating liquors now prohibited within the territory or area once comprising the territory or area of the now defunct or abolished City of Houston Heights, Harris County, Texas? Before proceeding further we deem it proper to quote and give a history of the several provisions of our State Constitution relating to the sale of intoxicating liquors in this State. In this regard we begin with the pertinent provision of the Constitution of 1876 and end with the pertinent constitutional provision adopted August 24, 1935.

Section 20 of Article XVI of the Texas Constitution of 1876 read as follows:

"SEC. 20. The legislature shall, at its first session, enact a law whereby the qualified voters of any county, justice's precinct, town or city, by a majority vote, from time to time, may determine whether the sale of intoxicating liquors shall be prohibited within the prescribed limits."

In 1891 Section 20 of Article XVI of our Constitution, supra, was amended so that it read as follows:

"SEC. 20. The legislature shall at its first session enact a law whereby the qualified voters of any county, justice's precinct, town, city (or such subdivision of a county as may be designated by the commissioners' court of said county) may by a majority vote determine from time to time whether the sale of intoxicating liquors shall be prohibited within the prescribed limits."

In 1919 Section 20 of Article XVI, supra, was again amended so that it read as follows:

"Sec. 20. (a) The manufacture, sale, barter and exchange in the State of Texas, of spirituous, vinous or malt liquors or medicated bitters capable of producing intoxication, or any other intoxicant whatever except for medicinal, mechanical, scientific or sacramental purposes, are each and all hereby prohibited.

"The Legislature shall enact laws to enforce this section.

"(b) Until the Legislature shall prescribe other or different regulations on the subject, the sale of spirituous, vinous or malt liquors, or medicated bitters, capable of producing intoxication,

or any other intoxicant whatever, for medicinal purposes shall be made only in cases of actual sickness and then only upon the prescription of a regular practicing physician, subject to the regulations applicable to sales under prescriptions in prohibited territory by virtue of Article 598, Chapter 7, Title 11 of the Penal Code of the State of Texas.

"(c) This amendment is self-operative and until the Legislature shall prescribe other or different penalties, any person acting for himself or in behalf of another, or in behalf of any partnership, corporation or association of persons, who shall, after the adoption of this amendment violate any part of this constitutional provision, shall be deemed guilty of a felony, and shall, upon conviction in a prosecution commenced, carried on and concluded in the manner prescribed by law in cases of felonies, be punished by confinement in the penitentiary for a period of time not less than one year nor more than five years, without the benefit of any law providing for suspended sentence. And the district courts and the judges thereof, under their equity powers, shall have the authority to issue, upon suit of the Attorney General, injunctions against infractions or threatened infractions of any part of this constitutional provision.

"(d) Without affecting the provisions herein, intoxicating liquors are declared to be subject to the general police power of the State; and the Legislature shall have the power to pass any additional prohibitory laws, or laws in aid thereof, which it may deem advisable.

"(e) Liability for violating any liquor laws in force at the time of the adoption of this amendment shall not be affected by this amendment, and all remedies, civil and criminal, for such violations shall be preserved."

In 1933 Section 20 of Article XVI of our Constitution was again amended so that it read as follows:

"Sec. 20. (a) The manufacture, sale, barter, or exchange in the State of Texas of spirituous, vinous or malt liquors or medicated bitters capable of producing intoxication, or any other intoxicant whatever except vinous or malt liquors of not more than three and two-tenths per cent (3.2%) alcoholic content by weight, (except for medicinal, mechanical, scientific or sacramental purposes) are each and all hereby prohibited. The Legislature shall enact laws to enforce this Section, and may from time to time prescribe regulations and limitations relative to the manufacture, sale, barter, exchange or possession for sale of vinous or malt liquors of not more than three and two-tenths per cent (3.2%) alcoholic content by weight; provided the Leg-

islature shall enact a law or laws whereby the qualified voters of any county, justice's precinct, town or city may, by a majority vote of those voting, determine from time to time whether the sale for beverage purposes of vinous or malt liquors containing not more than three and two-tenths per cent (3.2%) alcohol by weight shall be prohibited within the prescribed limits; and provided further that in all counties in the State of Texas and in all political subdivisions thereof, wherein the sale of intoxicating liquors had been prohibited by local option elections held under the laws of the State of Texas and in force at the time of the taking effect of Section 20, Article 16, of the Constitution of Texas, it shall continue to be unlawful to manufacture, sell, barter or exchange in any such county or in any such political subdivision thereof, any spirituous, vinous or malt liquors or medicated bitters, capable of producing intoxication or any other intoxicant whatsoever unless and until a majority of the qualified voters in said county or political subdivision thereof voting in an election held for such purpose shall determine it to be lawful to manufacture, sell, barter and exchange in said county or political subdivision thereof vinous or malt liquors containing not more than three and two-tenths per cent (3.2%) alcoholic content by weight, and the provision of this subsection shall be self-enacting."

In 1935 Section 20, supra, was again amended so as to now read as follows:

"Sec. 20. (a) The open saloon shall be and is hereby prohibited. The Legislature shall have the power, and it shall be its duty to define the term 'open saloon' and enact laws against such.

"Subject to the foregoing, the Legislature shall have the power to regulate the manufacture, sale, possession and transportation of intoxicating liquors, including the power to establish a State Monopoly on the sale of distilled liquors.

"(b) The Legislature shall enact a law or laws whereby the qualified voters of any county, justice's precinct or incorporated town or city, may, by a majority vote of those voting, determine from time to time whether the sale of intoxicating liquors for beverage purposes shall be prohibited or legalized within the prescribed limits; and such laws shall contain provisions for voting on the sale of intoxicating liquors of various types and various alcoholic content.

"(c) In all counties, justice's precincts or incorporated towns or cities wherein the sale of intoxicating liquors had been prohibited by local option elections held under the laws of the State of Texas and in force at the time of the taking effect of Section

20, Article XVI of the Constitution of Texas, it shall continue to be unlawful to manufacture, sell, barter or exchange in any such county, justice's precinct or incorporated town or city, any spirituous, vinous or malt liquors or medicated bitters capable of producing intoxication or any other intoxicants whatsoever, for beverage purposes, unless and until a majority of the qualified voters in such county or political subdivision thereof voting in an election held for such purpose shall determine such to be lawful; provided that this subsection shall not prohibit the sale of alcoholic beverages containing not more than 3.2 per cent alcohol by weight in cities, counties or political subdivisions thereof in which the qualified voters have voted to legalize such sale under the provisions of Chapter 116, Acts of the Regular Session of the 43rd Legislature."

The constitutional provision last above quoted is the one now in force in this State.

A reference to the agreed statement, supra, will disclose that on September 15, 1912, the City of Houston Heights was a separate duly incorporated municipality. Also, it is shown that it remained such at all times between such date and February 20, 1918. On the last named date its corporate existence was dissolved and its territory annexed to and became an integral part of the wet City of Houston. Since such last mentioned date the City of Houston Heights has ceased to exist as a separate municipality.

■ On September 15, 1912, while the City of Houston Heights was a separate duly incorporated municipality, there was held in and for the same a valid local option election wherein the qualified voters determined that intoxicating liquors should not be sold within its territorial limits. A reference to the several constitutional provisions, supra, will disclose that at the time this election was had Section 20 of Article XVI of our Constitution, as adopted in 1891, was in effect. Under its plain provisions it was permissible to adopt local option within the area comprising the corporate limits of a town or city. Since no election on the question of local option has been held as regards the original area of Houston Heights since September 15, 1912, it is evident that local option remained in full force and effect in the area in which it was originally voted until the City of Houston Heights was dissolved and its area annexed to the wet City of Houston. As we understand this record, no one questions this conclusion.

In 1919 Section 20 of Article XVI of our Constitution was again amended. The undoubted effect of this amendment was to

abolish all local option areas, as such, and to constitute the entire State of Texas dry territory; not by virtue of any previous local option elections, but by virtue of the 1919 amendment itself.

As already shown, the City of Houston Heights by vote of its qualified electors was annexed to the wet City of Houston on February 20, 1918. Section 20 of Article XVI of our Constitution as amended in 1919 was adopted in May of such year. It thus appears that at the time the City of Houston Heights was abolished and its area annexed to the City of Houston Section 20 of Article XVI of our Constitution as adopted in 1891 was in effect. It was certainly then the law that the abolition of the corporate existence of the City of Houston Heights and the annexation of its territorial area to the then wet City of Houston did not in any way affect the area originally comprised within the corporate limits of the City of Houston Heights as regards local option. In other words, it was certainly the law at the time the City of Houston Heights voted to dissolve its corporate existence and annex its territory to the wet City of Houston that when an area voted dry it remained dry until it was voted wet at a subsequent election held in and for the same identical area which had theretofore voted dry, and the change, or even abolition, of the political or corporate entity which comprised such area did not alter this fact or rule of law. Medford v. State, 45 Texas Crim. Rep. 180, 74 S. W. 768; Woods v. State, (Tex. Crim. App.) 75 S. W. 37; Oxley v. Allen, (Tex. Civ. App.) 107 S. W. 945; Nelson v. State, (Tex. Crim. App.) 75 S. W. 502; Ex parte Pollard, 51 Texas Crim. Rep. 488, 103 S. W. 878; Hill v. Howth, 101 Texas 620, 111 S. W. 649; Griffin v. Tucker, 102 Texas 420, 118 S. W. 635 and 119 S. W. 338; Ex parte Fields, (Tex. Crim. App.) 86 S. W. 1022; Ex parte Curlee, 51 Texas Crim. Rep. 595, 103 S. W. 895; Ex parte Elliott, 44 Texas Crim. Rep. 575, 72 S. W. 837; Ex parte Hayman, 45 Texas Crim. Rep. 532, 78 S. W. 349; Lewis v. State, (Tex. Crim. App.) 127 S. W. 808. These authorities could be multiplied several fold, but we think they are sufficient to establish the rule of law we have announced.

■■ It is contended that the above authorities do not apply in this case because they deal with political subdivisions of counties abolished or changed by commissioners' courts, while the present case deals with a city abolished by a vote of its qualified electors and annexed to a wet city in the same way. We think this contention is untenable. It is conceded that the City of Houston Heights did not exist as a municipality after September 15, 1918, but it did exist for local option purposes until the

State-wide prohibition amendment was adopted in 1919. That status was engrafted on it while it existed as a city, and such status continued to be so engrafted until 1919, when the entire State became dry. When the people of Houston Heights voted to become a part of the wet City of Houston they did not vote on local option at all. This must be true, because, under the law in effect, when Houston Heights voted dry, and also under the law in effect when Houston Heights voted annexation with the City of Houston, a territory once voted dry could only be voted wet by strict compliance with the then existing local option laws. Certainly, such local option laws did not permit local option once voted into effect to be voted off by merely voting on a collateral matter. A reading of such statutes clearly negatives such a conclusion. In this regard it is settled as the law of this State that where a power is expressly given by the Constitution, and the means by which, or the manner in which it is to be exercised, is prescribed, such means or manner is exclusive of all others. Parks v. West, 102 Texas 11, 111 S. W. 726. At the time the City of Houston Heights voted dry and at the time it was annexed to the wet City of Houston the local option laws of this State governed, and governed exclusively the matter of voting upon such question.

It is evident from what we have already said that we hold that the territory or area comprising the City of Houston Heights as it existed on September 15, 1912, became dry by virtue of the local option election held on that date. It is further evident that we hold such territory remained dry, as such, until the entire State became dry by the 1919 amendment of Section 20 of Article XVI of our Constitution. We now come to consider what effect subsequent amendments to Section 20 of Article XVI, supra, have had on the status of such territory or area as regards the question under discussion.

■■ As already shown, Section 20 of Article XVI, supra, was amended in 1933. By the terms of this amendment the entire State was continued as constitutionally dry territory, except as to vinous and malt liquors containing not more than three and two-tenths per cent. alcohol by weight. As to such liquors this amendment made the entire State, as such, wet, with certain exceptions and limitations. As to three and two-tenths per cent. vinous and malt liquors the 1933 amendment provided for a system of local option whereby the qualified voters of any county, justice's precinct, or town, or city could determine from time to time whether the sale, etc., thereof for beverage purposes should be therein prohibited. This amendment then provided, in effect, that all counties and political subdivisions thereof

wherein the sale of intoxicating liquors had been prohibited by local option elections held under the laws of the State of Texas and in force at the time of the taking effect of Section 20 of Article XVI, supra, should be dry territory as to all intoxicating liquors unless and until they should be voted wet as to vinous and malt liquors containing not more than three and two-tenths per cent. alcohol by weight. The effect of this provision was to make the area of any county, justice's precinct, or town, or city, which was dry at the time the entire State became dry under the amendment of 1919, still dry territory; but with the privilege of becoming wet territory as to vinous and malt liquors of not more than three and two-tenths per cent. alcoholic content by so voting at an election held in and for the exact area that had originally voted dry. Walling v. King, 126 Texas 446, 87 S. W. (2d) 1074; Coker v. Kmeicik, 126 Texas 440, 87 S. W. (2d) 1076; Teal v. State, (Civ. App.) 90 S. W. (2d) 651; Powell v. Smith, (Civ. App.) 90 S. W. (2d) 942. It may be argued that this amendment did not save the areas of towns and cities as dry territory which had theretofore so voted, because it only saves counties and political subdivisions thereof. We are fully aware of the fact that ordinarily towns and cities are not classed as political subdivisions of counties. In spite of this, we think the phrase "any political subdivision thereof," as used in this amendment, was intended to cover and include towns and cities. It is the intention of a legislative act that governs, and statutes are often given an interpretation or construction not in technical accord with the literal words used. Courts will not follow the letter of a statute where to do so would violate the purpose of the act, and lead to a conclusion contrary to its evident intent. Gilmore v. Waples, 108 Texas 167, 188 S. W. 1037; Edwards v. Morton, 92 Texas 152, 46 S. W. 792; Winder v. King, (Com. App.) 1 S. W. (2d) 587; Travelers Insurance Co. v. Marshall, 124 Texas 45, 76 S. W. (2d) 1007; 39 Tex. Jur., pp. 179 to 186, inclusive, and notes. In Insurance Company v. Marshall, supra, Chief Justice CURETON, speaking for this Court, reviewed the authorities on this question at great length, and in effect applied the above rules to the interpretation of constitutional provisions. In that opinion it was expressly held that courts should consider the history of the times out of which a constitutional provision grew, the evils intended to be remedied, and the good sought to be accomplished in interpreting constitutional provisions. When we consider this amendment from its four corners, and in the light of the history out of which it grew, the purported evils it sought to remedy, and the purported good it sought to accomplish, it is evident that it intended to save as dry all areas

that were dry at the time the 1919 amendment became effective, where at the same time local option was provided for in such areas by such 1933 amendment. In other words, the phrase "any political subdivision thereof," as used in this amendment, referred to and included the area of any justice's precinct, or town, or city. From all that has been said it is evident that we hold that the area which once comprised the City of Houston Heights remained dry territory all during the time the 1933 amendment was in force.

■■ We now come to consider whether the territory which once comprised the corporate area of the now defunct City of Houston Heights is dry under the provisions of the amendment of 1935. That amendment is the one now in effect and its provisions, construed in the light of what has gone before, must govern this case. By the terms of this amendment the entire State, as such, is again made wet as to all intoxicating liquors; but with certain exceptions and limitations. In effect, this amendment contains provisions which make any county, justice's precinct, or city, or town dry which was dry at the time it became effective. In other words, this amendment preserves the status quo as to dry areas as they existed at the time it became effective. It therefore preserved as dry any county, justice's precinct, or city, or town which was dry when it went into effect. Of course, any such area has the right to become wet by so voting at an election legally ordered and held for that purpose under present local option statutes. In this connection, however, we again note that such election must be held in the same area that originally voted dry. As to the case at bar we hold that while it is true that the City of Houston Heights has long since ceased to exist as a municipal corporation, still it yet exists for the purpose of holding a local option election to vote on the question of making it lawful to sell intoxicating liquors within the area originally voted dry. Ex parte Fields, supra; Griffin v. Tucker, supra. In this connection it will be noted that such vote may be had on the question of making such territory wet as to all intoxicating liquors or only as to wine and beer as defined by statute.

The judgment of the Court of Civil Appeals is reversed and that of the district court affirmed.

Opinion delivered November 24, 1937.

Rehearing overruled December 29, 1937.