Jay S. MYERS, County Judge et al.,
Appellants,

v.

Francisco J. MARTINEZ et al.,
Appellees.

No. 13430.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 28, 1959.

Rehearing Denied Feb. 25, 1959.

Andrew P. Johnson, Carrizo Springs, M. A. Childers, San Antonio, Sanders, Scott, Saunders, Brian & Humphrey, Amarillo, for appellants.

Looney, Clark, Mathews, Thomas & Harris, Austin, Petry, Claybrook & Phair, Carrizo Springs, R. Dean Moorhead, Austin, R. A. Weinert, Seguin, for appellees.

W. O. MURRAY, Chief Justice.

This suit was instituted by Francisco J. Martinez and others against Jay S. Myers, County Judge of Dimmit County, W. F. Johnson, H. H. Herrington, C. W. Barker, and J. L. Hester, County Commissioners of Dimmit County, each in his official capacity, seeking the issuance of a writ of mandamus requiring them to call an election to legalize the sale of alcoholic beverages in the incorporated city of Asherton in Dimmit County. After a hearing, the trial court ordered the writ of mandamus to issue, and the County Judge and Commissioners have prosecuted this appeal.

It appears that a petition was issued and signed by the required number of qualified voters residing in Asherton for an election to legalize the sale of alcoholic beverages in that City. The Commissioners' Court apparently refused to order the election because the County of Dimmit had theretofore held a county-wide election in which a majority of the electorate had voted to prohibit the sale, manufacture and barter of all alcoholic beverages in the entire county of Dimmit, and being of the opin-

ion that it would be illegal to hold the election petitioned for in a dry county, the Commissioners' Court refused the petition.

■ The question here presented is whether or not a city located within a dry county may vote to legalize the sale of liquor within the corporate limits of such City. In 1933, the people of Dimmit County, in a county-wide election, voted to permit the sale of 3.2% beer, but in 1935, in another county-wide election, the people of that county voted to prohibit the sale of all alcoholic beverages within the county. In 1933, the voters of Texas adopted a constitutional amendment permitting the sale of 3.2% beer, with the provision that elections could be held throughout the State, in counties, justice precincts, or cities and towns, to prohibit the sale of such 3.2% beer. 1933 Amendment of art. 16, § 20, Texas Constitution, Vernon's Ann.St. In 1935, Section 20 of Article 16 was again amended authorizing the sale of various kinds and types of intoxicating liquors within the State, and providing that elections could be held in counties, precincts, incorporated cities or towns to prohibit or legalize the sale of such alcoholic beverages. The amendment further provided that all territory of the State which was legally dry at the time of the adoption of state-wide prohibition in 1919, should remain dry territory, unless an election was held in such county, precinct, incorporated city or town to legalize the sale of alcoholic beverages therein. It was after the adoption of this 1935 amendment to the Constitution that Dimmit County voted prohibition on a county-wide basis, and thus we have the question as to whether or not an incorporated city located within a county that has adopted county-wide prohibition since the 1935 amendment may hold an election and legalize the sale of alcoholic beverages within the corporate limits of such a city.

The question above stated is of state-wide importance, and for that reason we think it would be well to here state the history of the constitutional provisions and statutes affecting the sale of intoxicating

liquor in Texas. This history may be divided into four chronological periods: First, the period from 1876 to 1887; second, the period from 1887 to 1919; third, the period from 1933 to 1935, and fourth, the period from 1935 to the present time.

When the 1876 Constitution of the State of Texas was adopted it was lawful to sell intoxicating beverages throughout the State. The plan of local option elections on the liquor question were introduced by this Constitution. Section 20, of Article 16, of that Constitution provides:

"The Legislature shall, at its first session, enact a law whereby the qualified voters of any county, justice's precinct, town or city, by a majority vote, from time to time, may determine whether the sale of intoxicating liquors, shall be prohibited within the prescribed limits."

The Legislature, in keeping with the mandate given it in the above section, passed the first statute to bring local option of the sale of intoxicating liquor into effect. The pertinent part of this statute reads as follows:

"* * * it shall be the duty of the Commissioners' Court of each county in the State, upon the written petition of fifty qualified voters of said county, or upon such petition by twenty qualified voters of any Justice's precinct, town or city therein, to order an election to be held by the qualified voters of said county, Justice's precinct, town or city, as the case may be, to determine whether the sale of intoxicating liquors, and medicated bitters producing intoxication, shall be prohibited in such county, Justice's precinct, town or city, or not; * * *." 8 Gammel's Laws. 862.

It will be seen that both the constitutional provision and the statute provided for an election to determine whether the sale of liquor should be prohibited, but neither provided for an election to legalize the sale of liquor.

The first case discussing the constitutional provision of 1876 and the statute enacted in keeping therewith was Whisenhunt v. State, 18 Tex.App. 491. The effect of this opinion was to hold that even though a county should vote dry, nevertheless, a Justice's precinct or a city or town within such a county could hold an election and legalize the sale of alcoholic beverages within its borders. In other words, it put the county on an equal footing with a Justice's precinct or an incorporated city or town. The court there said:

"One of the primary intentions was to give to justice's precincts, cities and towns in the county the same right 'from time to time' to test the matter by election as a county should have * * *.

"In a word, the enumerated subdivisions, recognized both in the Constitution and the law, were vested with the same rights as were counties, provided they might desire to exercise and enforce such rights independently of county action. To say they cannot have it independently of the rest of the inhabitants in a county would be to nullify what every one must concede is the plain intention and provision of the law."

In 1886, a like decision was made by the Court of Appeals in Woodlief v. State, 21 Tex.App. 412, 2 S.W. 812.

Thereafter in 1887, the Legislature enacted a statute which had the effect of setting aside the holding of the opinions in the two above cases. That law provided in part as follows:

"* * * but when prohibition has been carried at an election ordered for the entire county, no election on the question of prohibition shall be thereafter ordered in any justices precinct, town, or city of said county until after prohibition has been defeated at a subsequent election for the same purpose, ordered and held for the entire county, in accordance with the provisions of this title; nor in any case where prohibition has carried in any justices precinct shall an election on the question of prohibition be ordered thereafter in any town or city in such precinct until after prohibition has been defeated at a subsequent election ordered and held for such entire precinct." Gammel's Laws of the State of Texas, art. 3238, p. 896.

Thus the Legislature interpreted the constitution and laws relating to the sale, etc., of intoxicating liquor to be a one-edge sword, and thereafter you could have a dry precinct in a wet county, but not a wet precinct in a dry county.

This Act of the Legislature was held to be constitutional in Kimberley v. Morris, 87 Tex. 637, 31 S.W. 808. See also, Board of Trustees of Town of New Castle v. Scott, 125 Ky. 545, 101 S.W. 944.

This brings us to the second period hereinabove mentioned. The statute enacted in 1887 remained in effect until 1919, when it apparently was repealed by the adoption of national prohibition. Cone v. State, 90 Tex.Cr.R. 508, 236 S.W. 485. In any event it was repealed by not being included in the Revised Civil Statutes of 1925. During the period this statute was in effect there were a number of decisions to the effect that the voters could not create by election a wet precinct in a dry county. Griffin v. Tucker, 102 Tex. 420, 118 S.W. 635; Ex parte Fields, 39 Tex.Cr.R. 50, 46 S.W. 1127; Ex parte Pollard, 51 Tex.Cr.R. 488, 103 S.W. 878. After the adoption of nation-wide prohibition in 1919, and until its repeal in 1933, there were no further decisions upon this question.

We now reach the third period. In 1933 there was a constitutional amendment, art. 16, Sec. 20, of our State Constitution, so as to permit the sale of 3.2% beer, subject to local option elections. After the adoption of this amendment it was held that a justice precinct or an incorporated city or town could not legalize the sale of 3.2% beer in a county that had adopted county-

wide prohibition prior to 1919. Walling v. King, 126 Tex. 446, 87 S.W.2d 1074; Coker v. Kmeicik, 126 Tex. 440, 87 S.W. 2d 1076.

This brings us to 1935, when Section 20, Article 16, of the Texas Constitution was again amended and adopted in its present form, reading as follows:

"§ 20. Intoxicating liquors; open saloon; regulation; local option

"Sec. 20. (a) The open saloon shall be and is hereby prohibited.

The Legislature shall have the power, and it shall be its duty to define the term 'open saloon' and enact laws against such.

"Subject to the foregoing, the Legislature shall have the power to regulate the manufacture, sale, possession and transportation of intoxicating liquors, including the power to establish a State Monopoly on the sale of distilled liquors.

"(b) The Legislature shall enact a law or laws whereby the qualified voters of any county, justice's precinct or incorporated town or city, may, by a majority vote of those voting, determine from time to time whether the sale of intoxicating liquors for beverage purposes shall be prohibited or legalized within the prescribed limits; and such laws shall contain provisions for voting on the sale of intoxicating liquors of various types and various alcoholic content.

"(c) In all counties, justice's precincts or incorporated towns or cities wherein the sale of intoxicating liquors had been prohibited by local option elections held under the laws of the State of Texas and in force at the time of the taking effect of Section 20, Article XVI of the Constitution of Texas, it shall continue to be unlawful to manufacture, sell, barter or exchange in any such county, justice's precinct or incorporated town or city, any spirituous, vinous or malt liquors or medicated bitters capable of producing intoxication or any other intoxicants whatsoever, for beverage purposes, unless and until a majority of the qualified voters in such county or political subdivision thereof voting in an election held for such purpose shall determine such to be lawful; provided that this subsection shall not prohibit the sale of alcoholic beverages containing not more than 3.2 per cent alcohol by weight in cities, counties or political subdivisions thereof in which the qualified voters have voted to legalize such sale under the provisions of Chapter 116, Acts of the Regular Session of the 43rd Legislature. As amended Aug. 11, 1891, proclamation Sept. 22, 1891; May 24, 1919; Aug. 26, 1933; Aug. 24, 1935."

Article 666–32, Vernon's Ann.Penal Code, was enacted to carry these provisions into effect. It uses language very similar to the provisions of said Section 20 of the Constitution and provides for elections to prohibit *or legalize* the sale of alcoholic beverages.

The question of whether or not a precinct, town or city may hold an election to "legalize" the sale of alcoholic beverages under the present Constitution and statute has never been passed upon by any Court in this State, so far as we are able to determine. Appellant seems to rely primarily upon the following four cases: Houchins v. Plainos, 130 Tex. 413, 110 S.W.2d 549; Jackson v. State, 135 Tex.Cr.R. 140, 118 S.W.2d 313; Walling v. King, 126 Tex. 446, 87 S.W.2d 1074; Mayhew v. Garrett, Tex.Civ.App., 90 S.W.2d 1104. In the Houchins v. Plainos case the Court went no further than to hold that a dry city could not be made into a wet city by simply dissolving the city and transferring the territory into another city that was wet. In the Jackson case, regardless of the general statements made in the opinion, the Court went no further then to hold that

if county-wide prohibition existed at the time of the adoption of the constitutional amendment in 1933, a precinct in such a county could not hold an election to legalize the sale of liquor in such precinct, so long as the county remained dry. In Walling v. King, the Court held that where a county was dry in 1919, and after the adoption of the 1933 amendment voted against legalizing the sale of 3.2% beer, a city within such county could not by an election legalize the sale of 3.2% beer in such city. In Mayhew v. Garrett, the Court held the same thing as in the Walling case, except that the case related to a justice's precinct rather than to a city. None of these cases passed upon the question we have before us here. It is plain from the provisions of the 1935 amendment and the statute enacted thereunder, that the Legislature in submitting the constitutional amendment and enacting the statute, and the people in adopting the 1935 amendment, intended that counties, justice's precincts and incorporated cities or towns should be on an equal footing, and that by complying with the provisions of the law either of them might hold an election at any time to either "legalize" or "prohibit" the sale of alcoholic beverages, in keeping with the provisions of Sec. 40, art. 666, Vernon's Ann.Penal Code. The only limitation is that an election for the same purpose in the same area must not be held oftener than once a year, as is provided by Article 666–32, which reads in part as follows:

"No subsequent election upon the same issue shall be held within one (1) year from the date of the last preceding local option election in any county, justice's precinct, or incorporated city or town."

Fox v. Burgess, Tex., 302 S.W.2d 405; Mitchell v. McCharen, Tex.Civ.App., 119 S.W.2d 676. To hold otherwise would be to say that the Legislature and the electorate of this State did a useless thing in adding the words "or legalized" to § 20, art. 16, of the Constitution as adopted in 1935, and to ignore the plain language contained in the Liquor Act, art. 666–32, Vernon's Ann.Penal Code.

Appellant contends that where a county was voted dry the area is fixed, and the entire county remains dry until the same area votes wet, and that therefore you cannot have a wet precinct or city in a dry county. We are aware of the fact that such was the holding of the Courts of Texas so long as the statute passed in 1887, 9 Gammel's Laws, p. 894, was in effect. Since the repeal of that statute the reason for the holding has disappeared and the Courts should follow the plain language of the Constitution and statutes as they now read. Art. 16, § 20, Constitution, and arts. 666 and 667, Vernon's Ann.Penal Code.

Appellant further contends that the theory of local self-government requires that the will of the county should control over the will of the precinct or city. We do not agree. The doctrine of local self-government requires that the will of the smaller unit shall control over the will of the larger unit. The doctrine of local self-government will not support a rule to the effect that the county must control the precinct or city. To follow appellant's contention to an ultimate conclusion, the principles of local self-government would require that the will of the people of the State should control over the will of the county, and the will of the people of the United States should control over the will of the people of the State. We are aware of the fact that often the State does dominate the county, and the federal government, the State government, but we do not think this is based upon the principles of local self-government, it is based upon other principles or reasons.

The judgment of the trial court is affirmed.