Joe WARREN et al., Appellant,

v.

Odie MOORE et al., Appellees.

No. 6992.

Court of Civil Appeals of Texas.

Amarillo.

June 20, 1960.

Rehearing Denied July 11, 1960.

**396**

Witherspoon, Aikin, Thomas & Langley, Hereford, for appellants, Joe Warren et al.

Russel A. Moran, Dimmitt, for appellants, Raymond Wilson, County Judge, and the Commissioner of Castro County.

Clark, Mathews, Thomas, Harris & Denius and Mary Joe Carroll, Austin, as amici curiae.

Roy Bass and Kennett Hobbs, Lubbock, for appellees.

CHAPMAN, Justice.

On October 10, 1959 in Justice Precinct 4 of Castro County an election was held in which the following issue was submitted to the voters of said precinct:

"For the legal sale of alcoholic beverages for off-premises consumption only."

or

"Against the legal sale of alcoholic beverages for off-premises consumption only."

Subsequently, and in due time, the Commissioners' Court declared the results of the election to be 160 votes for the sale of all alcoholic beverages for off-premises consumption only, and 91 votes against such sale. This case was thereafter duly filed by Odie Moore et al. against Raymond Wilson, County Judge of Castro County, and the Commissioners' Court thereof, contesting the election. Joe Warren, Clarence Shulte, Fred Annan, Donald Annan, Josephine Ball and Urban Ball intervened as resident citizens of said precinct on behalf of themselves and for said precinct and the majority of the voters therein.

The case was tried to the court upon an agreed statement of facts in which all parties agreed, in effect, that there were no procedural irregularities. It was also agreed that: "By virtue of various local option elections the sale of alcoholic beverages within Castro County was continuously prohibited from June 2, 1903, until the date of the election here contested, except for what effect, if any, the adoption of national prohibition and/or the failure to include in the Revised Civil Statutes of 1925 of the 1887 Act—Gammel's Laws of the State of Texas, Article 3238, p. 896, may have had. Further, without admitting the validity of such election, Justice Precinct 4 of Castro County, Texas, voted 89 to 68 to legalize the sale of 3.2 per cent beer in such precinct, the results of which election was declared by the Castro County Commissioners' Court on August 10, 1934. It is agreed that the election of October 10, 1959, in Justice Precinct 4, Castro County, Texas, was held in accordance with the applicable state laws * * *; provided, however, that the election is questioned only by the plaintiffs on the grounds of contest as alleged in plaintiffs' pleadings."

In their pleadings appellees allege: " * * on June 3, a county-wide local option election was held in Castro County which resulted in the prohibition of the sale of all alcoholic beverages within the said county; although subsequent county-wide local option elections had been held, the prohibition of the sale of alcoholic beverages has been consistently upheld by the voters of Castro County from 1903 to date; the sale of alcoholic beverages was thus prohibited in Castro County at the time the 1935 Amendment to Section 20, Article 16 of the Texas Constitution became effective and has remained so ever since. * *"

The only reason assigned by the trial court for finding the election void was "that Castro County, Texas, has been continuously 'dry' since June 3, 1903, * * *." By brief appellees take the position that under Subsection (c) of the 1935 Amendment to Article 16, Section 20 of the Texas Consti-

tution, Vernon's Ann.St., the election in controversy was void. Therefore, the question here presented is whether a Subdivision of a county such as is enumerated in Article 16, Section 20 of the Constitution of Texas; that is, a justice's precinct or incorporated town or city is barred from voting "wet" if the county in which such subdivision is located was "dry" at the time of the 1935 Constitutional Amendment, unless or until the county as a whole votes "wet."

It has been held that ordinarily towns and cities are not classified as political subdivisions but as used in Section 20 of Article 16 of the Constitution of Texas it was intended to include towns and cities. Houchins v. Plainos et al., 130 Tex. 413, 110 S.W. 2d 549.

The history of the constitutional provisions and statutes affecting the sale of intoxicating liquor in Texas may be divided into four chronological periods: "First, the period from 1876 to 1887; second, the period from 1887 to 1919; third, the period from 1933 to 1935, and fourth, the period from 1935 to the present time." Myers v. Martinez, Tex.Civ.App., 320 S.W.2d 862, 863.

At the time the 1876 Constitution of Texas was adopted it was lawful to sell intoxicating beverages throughout the state. The local option plan of elections on the liquor question had its inception by this Constitution, Section 20, Article16 thereof, providing:

> "The Legislature shall, at its first session, enact a law whereby the qualified voters of any county, justice's precinct, town or city, by a majority vote, from time to time, may determine whether the sale of intoxicating liquors, shall be prohibited within the prescribed limits."

In keeping with the mandate given in the section just quoted the legislature passed the first statute to bring local option of the sale of intoxicating liquor into effect but neither the constitutional provision nor the statute provided for an election to legalize the sale of intoxicating liquor. They only provided for an election to determine whether such sale should be prohibited. Myers v. Martinez, supra.

The first judicial construction of the 1876 constitutional provision and the statute enacted in keeping therewith held that even though a county should vote dry an enumerated subdivision therein could hold an election and legalize the sale of alcoholic beverages within the borders of such subdivision. Whisenhunt v. State, 18 Tex. App. 491. That opinion was announced on June 17, 1885. A like holding was made in 1886 in the case of Woodlief v. State, 21 Tex.App. 412, 2 S.W. 812. Then in 1887 the Legislature enacted a statute which had the effect of nullifying the holding just cited. That statute provided in part as follows:

> "* * * but when prohibition has been carried at an election ordered for the entire county, no election on the question of prohibition shall be thereafter ordered in any justice's precinct, town, or city of said county until after prohibition has been defeated at a subsequent election for the same purpose, ordered and held for the entire county, in accordance with the provisions of this title, nor in any case where prohibition has carried in any justice's precinct shall an election on the question of prohibition be ordered in any town or city in such precinct until after prohibition has been defeated at a subsequent election ordered and held for such entire precinct." Gammel's Laws of the State of Texas, Art. 3238, pp. 896.

This statute from which we have just quoted thus provided a county could have a dry enumerated subdivision within a wet county but not a wet subdivision within a dry county. This legislative act was held to be constitutional. Kimberly et al. v. Morris et al., 10 Tex.Civ.App. 592, 31 S.W. 808, 809 (writ refused).

We now come to the second hereinabove mentioned period of the four periods heretofore named, which was the period from 1887 to 1919. The 1887 Statute was apparently repealed by the adoption of national prohibition. At least our Court of Criminal Appeals so held. Cone v. State, 90 Tex.Cr.R. 508, 236 S.W. 485. "In any event it was repealed by not being included in the Revised Civil Statutes of 1925." Myres v. Martinez, supra. During the period from 1887 to 1919, the period in which the 1887 enactment was in effect, there were some decisions in our state to the effect that the voters could not create by election a wet precinct in a dry county. Ex parte Fields, 39 Tex.Cr.R. 50, 46 S.W. 1127; Griffin v. Tucker, 102 Tex. 420, 118 S.W. 635. Those cases do not militate against appellant's contention here urged because the very specific wording of the 1887 enactment above quoted precluded an election on the liquor question in the named subdivision of the county where prohibition had been carried at an election ordered for the entire county until and unless prohibition was subsequently defeated at an election ordered and held for the same purpose for the entire county. We do not find such language in the 1935 Amendment to the Constitution nor the statute putting it into effect.

The third period of the four chronological periods above named covers only the time between the 1933 Constitutional Amendment, Article 16, Section 20, and the 1935 Amendment thereto. The 1933 Amendment was for the purpose of permitting the sale of 3.2 per cent beer, subject to local option elections. Following this Amendment at least two civil cases interpreting it held that the enumerated subdivisions of the county could not legalize the sale of 3.2 per cent beer in a county that had adopted county-wide prohibition prior to 1919. We have reference to Walling v. King, 126 Tex. 446, 87 S.W.2d 1074 and Coker v. Kmeicik, 126 Tex. 440, 87 S.W.2d 1076. We find no fault with that line of cases because the 1919 Amendment had substituted an entirely new section based on the policy of prohibition rather than local option. The Amendment of August 1933 amended only Subsection (a) thereof inserting an exception of vinous or malt liquors of not more than 3.2 per cent alcoholic content by weight to the prohibitions contained therein, and adding provisions as to the regulation of such liquors and local option concerning their sale.

The last of the four periods began with the enactment adopted August 24, 1935, which again substituted a new section, but which was this time based upon a policy of local option rather than prohibition. The 1935 Amendment to Section 20 of Article 16, and which was adopted in its present form, after making provision to prohibit the open saloon and providing the Legislature should have the power to regulate the manufacture, sale, possession, and transportation of intoxicating liquors, including the power to establish a State monopoly on the sale of distilled liquors, reads as follows:

" (b)   The Legislature shall enact a law or laws whereby the qualified voters of any county, justice's precinct or incorporated town or city, may, by a majority vote of those voting, determine from time to time whether the sale of intoxicating liquors for beverage purposes shall be prohibited or legalized within the prescribed limits; and such laws shall contain provisions for voting on the sale of intoxicating liquors of various types and various alcoholic content.

" (c)   In all counties, justice's precincts or incorporated towns or cities wherein the sale of intoxicating liquors had been prohibited by local option elections held under the laws of the State of Texas and in force at the time of the taking effect of Section 20, Article XVI of the Constitution of Texas, it shall continue to be unlawful to manufacture, sell, barter or exchange in any such county, justice's

precinct or incorporated town or city, any spirituous, vinous or malt liquors or medicated bitters capable of producing intoxication or any other intoxicants whatsoever, for beverage purposes, unless and until a majority of the qualified voters in such county or political subdivision thereof voting in an election held for such purpose shall determine such to be lawful; provided that this subsection shall not prohibit the sale of alcoholic beverages containing not more than 3.2 per cent alcohol by weight in cities, counties or political subdivisions thereof in which the qualified voters have voted to legalize such sale under the provisions of Chapter 116, Acts of the Regular Session of the 43rd Legislature. As amended Aug. 11, 1891, proclamation Sept. 22, 1891; May 24, 1919; Aug. 26, 1933; Aug. 24, 1935."

Article 666–32, Vernon's Annotated Penal Code, was enacted to effectuate these provisions. The language of this statute is very similar to the provisions of Section 20 of Article 16, above quoted, and provides for elections to prohibit *or legalize* the sale of alcoholic beverages. (Emphasis added.)

Appellees here, as did appellants in the Myers v. Martinez case, rely principally upon four cases to justify their contention, which is that "the county commissioners have no authority to call and hold an election for Precinct 4 only, until a county-wide election resulting in a change of the local option status is first held." Those cases are Houchins v. Plainos, 130 Tex. 413, 110 S.W.2d 549; Jackson v. State, 135 Tex. Cr.R. 140, 118 S.W.2d 313; Walling v. King, 126 Tex. 446, 87 S.W.2d 1074; Mayhew v. Garrett, Tex.Civ.App., 90 S.W.2d 1104. Each of those cases is distinguished by the San Antonio Court of Civil Appeals in Myers v. Martinez, supra, after that court had first said: "The question of whether or not a precinct, town or city may hold an election to 'legalize' the sale of alcoholic beverages under the present Constitution

and statute has never been passed upon by any Court in this State, so far as we are able to determine."

We are unable to find in the constitution or statute under consideration or in any statement made by either the San Antonio Court of Civil Appeals or the Supreme Court of Texas in the Myers v. Martinez case any wording that justifies appellees' contention just quoted in the preceding paragraph. Even Subsection (c) upon which appellees rely provides that in all counties, *justice's precincts or incorporated towns or cities* in which the sale of intoxicating liquors had been prohibited by local option elections in force at the time of the taking effect of Section 20 of Article 16, it shall continue to be unlawful to manufacture, sell, barter or exchange in such areas intoxicating liquors "unless and until a majority of the qualified voters in such county *or political subdivision thereof* voting in an election held for such purpose shall determine such to be lawful." (Emphasis added.)

It will be noted that this wording says, "in such county *or* political subdivision." (Emphasis added.) Had the framers of this section of the constitution intended it to prohibit "wet" areas in a "dry" county they could easily have done so by using such verbiage as that used in the 1887 Amendment which provided: " * * * when prohibition has been carried at an election ordered for the entire county, no election on the question of prohibition shall be thereafter ordered in any justice's precinct, town or city *until prohibition has been defeated at a subsequent election for the same purpose ordered and held for the entire county * * *"* (Emphasis added.) We find no such language in the 1935 Amendment, but to the contrary Section 20 provides the county and enumerated subdivisions shall have the right to prohibit *or legalize* within the prescribed limits. The Supreme Court of Texas in Myers v. Martinez, 326 S.W.2d 171, has, by a per curiam opinion, specifically approved a statement by the San An-

tonio Court of Civil Appeals in the same case, 320 S.W.2d 862, 866, wherein the intermediate court said:

"Appellant contends that where a county was voted dry the area is fixed, and the entire county remains dry until the same area votes wet, and that therefore you cannot have a wet precinct or city in a dry county. We are aware of the fact that such was the holding of the Courts of Texas so long as the statute passed in 1887, 9 Gammel's Laws, p. 894, was in effect. Since the repeal of that statute the reason for the holding has disappeared and the Courts should follow the plain language of the Constitution and statutes as they now read. Art. 16, § 20, Constitution, and arts. 666 and 667, Vernon's Ann.Penal Code."

In so approving the Supreme Court said [326 S.W.2d 172]: "The judgment of the Court of Civil Appeals is correct in so far as it rests upon a holding that Article 666-32, Vernon's Annotated Penal Code, *permits* wet justice precincts and incorporated cities and towns in dry counties and that the statute was authorized by 1935 constitutional amendment, but it is unnecessary to decide whether a statute prohibiting wet areas in dry counties would be unconstitutional." It should be noted that the Supreme Court in the statement just quoted does not make any distinction between those counties that had voted "dry" before the 1935 Constitutional Amendment and those that voted "dry" since, but simply states that the named article permits "wet" subdivisions in "dry" counties and that such statute was authorized by the 1935 Constitutional Amendment. In view of our holding here we also find it unnecessary to pass upon the constitutional question raised.

We believe the clear mandate of the Myers v. Martinez case by both appellate courts, as does the specific wording of the 1935 Constitutional Amendment and the statute named, require us to hold that Precinct 4 of Castro County had the legal right to an election within that precinct to determine the local option status of that precinct, and that the trial court was in error in its judgment holding to the contrary.

The judgment of the trial court is reversed and rendered that the election in controversy was in all things proper, lawful and valid, and was authorized by the Constitution and the laws of Texas.