

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

July 10, 1973      *Modified H-34*

Honorable William J. Benardino          Opinion No. H- 59
County Attorney
Montgomery County                       Re: Local option election

Dear Mr. Benardino:

You have submitted to us the original request you received from the Honorable Lynn Coker, County Judge of Montgomery County, for your opinion concerning local option elections; your response to Judge Coker; and your authorities submitted to us with your request for our opinion.

Based on these instruments it is our understanding that Montgomery County is divided into four precincts.

Precinct 1 is wet for the legal sale of all alcoholic beverages, including mixed beverages, the most permissive status allowed. [Article 666-40 (b) (7), V. T. P. C. ]

Precinct No. 2 is wet for the sale of beer. [Article 666-40 (b) (2)]. On August 5, 1972, an election was held under Article 666-40 (b) (7) for or against the legal sale of all alcoholic beverages including mixed beverages. The majority cast their votes against the proposition.

The only information given with reference to Precinct No. 3 is that on April 5, 1972, an election was held in the incorporated city of Magnolia under Article 666-40, § (b) (1), for or against the legal sale of beer for off-premises consumption only, with a majority of the voters casting their votes against the propostition. However, Precinct No. 3 is wet for the legal sale of all mixed beverages.

We have no information concerning Precinct No. 4.

Apparently petitions have been circulated (1) in Montgomery County requesting the Commissioners Court to call a county-wide election pursuant to Article 666-40 (b) (7) and pursuant to (2) in Precinct No. 3 for the same purpose. Your questions concern whether certain precinct voters will be able to vote in the county-wide election and the effect of the election on the local option statuts of particular governmental subdivisions should the legalization issue pass or fail.

Question No. 1:

> "Due to the fact that Justice Precinct No. 2
> voted on this same issue less than a year ago, would
> the voters of Precinct No. 2 be able to vote in the
> county-wide election?"

Which political subdivisions can hold local option elections is determined by Article 16, § 20, Constitution of Texas, as interpreted in Myers v. Martinez, 320 S. W. 2d 862, (Tex. Civ. App., San Antonio, 1959), err. ref., n. r. e., 326 S. W. 2d 171 (Tex. 1959), where the Court of Civil Appeals said:

> " . . . counties, justice's precincts and incorporated
> cities or towns should be on equal footing, and that by
> complying with the provisions of the law either of them
> might hold an election at any time to either 'legalize'
> or 'prohibit' the sale of alcoholic beverages, in keeping
> with the provisions of Sec. 40, art. 666, Vernon's Ann.
> Penal Code. . . ." (320 S. W. 2d at 866).

The only limitation is that an election for the same purpose in the same area must not be held oftener than once a year as is provided by Article 666-32 which reads:

> "No subsequent election upon the same issue shall
> be held within one year from the date of the last
> preceding local option election in any county,
> justice precinct, or incorporated city or town."

There is no exception either constitutional or statutory that prohibits voters of a precinct who within the last year cast their votes against the legalization issue to vote on the same issue in a county-wide local option election. In fact, if only a portion of the county were permitted to vote in the county-wide election, such election would probably be void. See Patton v. Texas Liquor Control Board, 293 S. W. 2d 99 (Tex. Civ. App. 1956, error ref., n. r. e.).

Thus, under the plain language of the Texas Constitution and Statutes, the qualified voters resident in Precinct No. 2 are entitled to vote in a county-wide local option election along with the other qualified voters of the county.

Attorney General Opinions No. WW-945 (1960) and WW-976 (1960) support the proposition that all eligible voters in Precinct No. 2 would be able to vote in a county-wide election even though they voted on the same issue less than one year ago.

Question No. 2:

"If the election on a county-wide basis carries for the legal sale of all alcoholic beverages including mixed beverages, would Precinct No. 2 be wet for all purposes or would the Attorney General's Opinion No. 286 apply and Precinct No. 2 remain as is?"

The term "local option" is well understood by the voters of Texas. A local option election is a clear, valid declaration of the will of the voters. The Supreme Court in Houchins v. Plainos, 110 S. W. 2d 549(Tex.1937),held that the Constitution provides the exclusive means by which the issue of prohibition or legalization of alcoholic beverages should be decided.

Under Texas case law, a local option law is enforced until it has been voted out by a majority of the voters of the territory where the law was originally adopted. Myers v. Martinez, supra; Attorney General's Opinion C-681 (1966); WW-945 (1960), WW-976 (1960).

However, under the Constitution and local option statutes, a negative vote on a legalization issue has no effect. The local option status of the governmental subdivision remains the same as it was before the election. See Attorney General's Opinion No. WW-1104 (1961). It takes a positive vote in either a legalization or prohibitory election to establish a local option statuts that can not be changed subsequently except by a majority of the voters in the same territory. The only prohibitory effect authorized by statute is that no subsequent election upon the same issue in the same political subdivision shall be held within one year from the date of the last preceding local option election, Article 666-32, Vernon's Texas Penal Code.

In Fox v. Burgess, 302 S.W. 2d 405 (Tex. 1957), the Supreme Court held that a vote on issue 'E' against the legal sale of all alcoholic beverages would not preclude another election within the same year on a different issue.

Further, Article 666-40 (i), provides:

"No local option election may affect the sale of mixed beverages unless the proposition specifically mentions mixed beverages. In any legalization or prohibitory local option election where any shade or aspect of the issue submitted involves the sale of mixed beverages, any other type or classification of alcoholic beverages which was legalized prior to such election shall remain legalized without regard to the outcome of said election on the question of mixed beverages."

Since there is no local option status of Precinct No. 2 which would prohibit the legalization of all alcoholic beverages including mixed beverages on a county-wide basis, the local option status of Precinct No. 2 would be the same as the county until a different result was established by a subsequent precinct election should there ever be one.

Question No. 3:

"If the Precinct No. 3 election was first and carried and the county-wide election last, what would be the status of Precinct No. 3?"

Since the issue of the legalization of all alcoholic drinks including mixed drinks, Article 666-40 (b) (7), has not been previously presented in Precinct 3 and assuming all the statutory and constitutional provisions are complied with, Precinct No. 3 would take on new local option status independent of the county. As discussed in Question No. 1, the voters in Precinct No. 3 would be entitled to vote in the county-wide election. The county-wide election is constitutionally and statutorily authorized and should the election presenting the legalization issue containing Article 666-40 (b) (7) carry, the precinct would take on the status of the county until the qualified voters of Precinct 3 elect to establish a different status.

Question No. 4:

"If either or both elections carry, will the incorporated city of Magnolia be wet for everything except beer off premises?"

As discussed under Question 2, a negative vote in a legalization election establishes no local option status nor does it have any prohibitory effect. Just as Precinct No. 2 and 3 would take on the status of the county, there being no binding local option status prohibiting such an effect, so would the city. Of course, the city in a subsequent election could change its local option status imposed by the county election by electing to do so by a majority vote.

Question No. 5:

"If the election on a county-wide basis fails, would Precinct No. 1 be dry for all purposes?"

Again, as previously discussed, the local option status of the county, justice precincts or incorporated city or town can only be changed by an affirmative vote of the majority of the people within the political subdivision. A "no" vote has no effect and the county and justice precinct and city would retain the same local option status existing before the election. The only way Precinct 1's local option status, "wet for the legal sale of all alcoholic beverages including mixed beverages," could be changed would be for the voters in that precinct to change the status.

It has been called to our attention that in Attorney General Opinion No. H-34 (1973) it was stated, contrary to what we have said above, that a negative vote on a "for" election will render the previously wet areas dry. We were incorrect and to that extent Opinion H-34 is hereby modified.

## SUMMARY

Where there is a county-wide local option
election, it is unimportant that certain precincts
had had such elections within one year. All areas
of the county participate in the election. A negative
vote on the election would not affect those areas of
the county which were already wet. An affirmative
vote would render the entire county wet. However,
the voters of any proper area could vote their area
dry as a subsequent election for that purpose.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee